## KAUMAGRAPH CO. v. SUPERIOR TRADE MARK MFG. CO., Inc., et al.

### No. 442.

Circuit Court of Appeals, Second Circuit.

Aug. 7, 1934.

Mock & Blum, of New York City, for plaintiff-appellant.

Victor D. Borst, of New York City, for defendants-appellees.

Before L. HAND, AUGUSTUS N. HAND, and CHASE, Circuit Judges.

CHASE, Circuit Judge.

The patent in suit is No. 1,718,966, issued to Winthrop Stanley Lawrence July 2, 1929, on his application filed January 11, 1926. The plaintiff's right to sue upon it is unquestioned. It is for a marking composition and, more specifically, relates to a transfer ink solid at ordinary temperatures, but fusible to the extent that when heated it can be kept liquid at usable temperatures for about half an hour before it solidifies. A very important characteristic is that it is readily soluble in water.

While the composition is useful as a base for making other things, it is especially a satisfactory means for marking stockings by the transfer method, which consists of printing the marking first on a thin paper ribbon and allowing the ink to cool; then the printed face of the paper is placed upon the stocking or other article to be marked; heat is applied to the back of the paper, usually by means of a hot iron, and the fusible marking goes over by absorption to the fabric. When it is desired to remove the marking from the fabric, a washing in water is all that is required. Before the patent was applied for, there was no appreciable demand for this sort of transfer ink, but in two or three years its use became extensive.

Claims 1 to 4, inclusive, and 6 to 8 inclusive, are relied upon. The claims of the last group are for methods for making the composition of the others. The use of transfer ink is old, and of course such ink is as old as its use. In his specifications, the patentee stated: "The transfer compositions which have been hitherto commonly used have not been attacked by water alone since they were compounded of resins, waxes and oils. Substances of this class are either absolutely insoluble in a soap solution or they are emulsified only to a very slight extent. However, substances of this class are well adapted to make a fusible composition having a wide range of melting temperature and are also well adapted to make an ink which can be utilized in connection with an intaglio printing surface." And, in speaking of his ink, said: "The final composition has for its major ingredients a mixture of resin acid soaps, namely rosin soap and shellac soap." One of the other ingredients is an ordinary soap, "such as sodium stearate or sodium palmitate," and is called in the claims which mention it "the soap of fatty acid." What the patentee thought was novel in his patent is stated by him as follows: "I believe that I am the first to form a transfer ink by combining a resin acid with an alkali and soluble bodies so as to form a fusible composition which is solid at ordinary temperatures, melts without any substantial decomposition, and which is readily soluble and can be easily dissolved or decomposed by water, and that my invention is pioneer in this respect."

From what has been said it will be seen that the composition of the patent is in essence a mixture of soaps which when combined give to the ink the desired qualities. Dye is added to obtain any wanted color. But the use of a resin acid soap is emphasized in the patent, and it forms a part of every claim in suit. If the patent teaches anything, it is that such a soap is essential to the com-

position. The District Judge correctly found that: "The specific composition disclosed in the patent in suit is composed of 30 parts of soap flakes, 50 parts of hot water and 10 parts of glycerine, 7 parts of caustic soda, 70 parts of rosin and 65 parts of white powdered shellac. In carrying out the process the soap flakes, the hot water and the glycerine are boiled until a jelly-like mass is formed, and then the other ingredients are added. The mixture is boiled until it becomes homogeneous and is then further heated until the water evaporates."

The defendant corporation makes a transfer ink which has all of the useful properties of that of the patent. The individual defendants are former employees of the plaintiff who are officers of the corporate defendant, and some emphasis of that is made by the plaintiff, although in the view we take of the question of infringement its mere mention is sufficient here. The trial judge found that: "Exclusive of the coloring matter the composition of the corporate defendant and the process employed in producing it are exemplified as follows: 187 grams of No. 8 boiled linseed oil, 227 grams of ordinary yellow beeswax, and 75 grams of carnauba wax were placed in a container. The container was then placed upon a gas stove and the wax melted so that the three ingredients could be intimately mixed together. While this mixture was at a temperature of approximately 95 degrees C., 75½ grams of a weak alkali, by name triethanolamine, were added to the molten wax and boiled linseed oil. After the triethanolamine was mixed in with the other ingredients, 17½ grams of caustic soda dissolved in 42¾ grams of water were added to the container and mixed in with the other ingredients. There were next added to the mixture 100 grams of ordinary granulated sugar and the mixture was then heated and stirred to drive off the water."

All of these ingredients were well known and used in the manufacture of inks long before the invention of the patent. Neither beeswax nor carnauba wax have anything in common, chemically speaking, with resin or shellac. They are composed in part of fatty acids, and, when saponified, the result is a soap of a sodium salt of a fatty acid; never a resin acid soap. And it is clear that the transfer ink of the defendants does not contain any rosin soap or resin acid soap, which is the same thing under a slightly different name.

This being so, the question at issue becomes merely whether or not the defendants have infringed by making and using a transfer ink just as good as that of the patent but without using as an ingredient the thing upon which above all else the disclosure of the patent was based and to which the claims in suit are all tied. While some attempt has been made in this suit to minimize the importance of resin acid soap and make it appear that it does not differ materially from a fatty acid soap, which the defendants use, that effort would be vain, even if it were not otherwise shown to be, because the patentee himself in claim 2 either admitted that for the purposes of his patent they were not the same or else inserted a wholly meaningless claim. That claim reads: "A solid fusible base for a marking composition including a mixture of a resin acid soap and the soap of a fatty acid, the said base being decomposable by water." Of course, unless they were different, he was calling a mixture what was merely an increase in the quantity of the same thing.

The plaintiff's position in this action is, in effect, that the patentee, by disclosing and claiming a transfer ink into which resin acid soap is always put, has obtained a monopoly in the manufacture of transfer inks so general that one who makes a transfer ink without using resin acid soap, or what before use as an ingredient is its equivalent, infringes the patent. With all due regard to the doctrine of equivalents, it surely is not enough to prove infringement of a patent for a composition of matter to show that some one else has made, by using different ingredients, a composition that has the same useful qualities. That would extend the monopoly to cover the broad field of use and in the instant case prevent others from making any transfer ink regardless of what went into it, that was just as good as that of the patent. The patent did not foreclose the right of the public as to that, for the object of an invention is not the invention. See White v. Dunbar, 119 U. S. 47, 7 S. Ct. 72, 30 L. Ed. 303. And, of course, only what is the invention is patentable.

Reference to the proceedings in the Patent Office make it plain that the patentee was compelled to confine the product claims in suit to a combination of resin acid soap with a fatty acid soap. His original claim 1 mentioned only a resin acid soap. This was rejected because it claimed "nothing more than a well known substance, i. e., resin acid soap." The claim was amended but without adding the combination of these

420

two kinds of soap and was rejected on patent No. 1,070,713, issued August 19, 1913, to Meckbach, because resin acid soap, "an old product," had merely been given a new adaptability. Then the patentee acquiesced in the rejection and canceled the claim. Original claim 6 was for a composition of resin soap and glycerine, but that was rejected on patent No. 1,515,123, issued November 11, 1924, to Kruse, and the patentee acquiesced and canceled that claim. Moreover, patent No. 918,903, issued to Pignone April 20, 1909, shows that the patentee was mistaken when he stated in his specifications that he was in any sense a pioneer in the making of transfer inks. He is entitled to have his patent construed broadly enough to cover what he disclosed and claimed when his language is reasonably read in the light of the prior art. But, since he obtained his patent as he did by taking the position that resin acid soap is not the same as the soap of a fatty acid, the plaintiff should not be allowed to ignore that and contend that they are the same for the purposes of an infringement suit on the patent. If permitted to do so, there would be little point to the careful restriction of claims in proceedings in the Patent Office. A patent for a composition of matter covers the composition described and claimed, but not every use or function of it. A description of such a composition in terms of its use or function would not be sufficient to make it patentable. Holland Furniture Co. v. Perkins Glue Co., 277 U. S. 245, 257, 48 S. Ct. 474, 72 L. Ed. 868. Consequently it follows from the decision just cited that it is not sufficient to make out a cause of action in a suit for the infringement of a patent for an improved composition of matter to show that both it and the claimed infringement may fairly bear the same description in terms of use and function. See, also, The Incandescent Lamp Patent, 159 U. S. 465, 16 S. Ct. 75, 40 L. Ed. 221. These claims are all perfectly clear, and all include resin acid soap, and the range of equivalents must be measured by what is actually described and claimed. Homer Brooke Glass Co. v. Harford-Fairmont Co. (C. C. A.) 262 F. 427.

Since the method claims 6, 7, and 8 are for making the product claimed in the others, it is plain that they cannot be infringed by one who does not make that product and require no separate discussion. And since the patent has not been infringed, we reserve the question of its validity.

Decree affirmed.