## AMERICAN CHEMICAL PAINT CO. v. FIRESTONE STEEL PRODUCTS CO.

### No. 8358.

Circuit Court of Appeals, Sixth Circuit.

Jan. 17, 1941.

Harvey Lechner, of Philadelphia, Pa. (Jones, Day, Cockley & Reavis and W. T. Kinder, all of Cleveland, Ohio, and Arthur Synnestvedt and Harvey Lechner, all of Philadelphia, Pa., on the brief), for appellant.

Giles S. Rich, of New York City (Slabaugh, Seiberling, Huber & Guinther, of Akron, Ohio, and Williams, Rich & Morse, Henry D. Williams, and Giles S. Rich, all of New York City, on the brief), for appellee.

Before ALLEN, ARANT, and MARTIN, Circuit Judges.

ALLEN, Circuit Judge.

This appeal is from a decree dismissing a bill of complaint alleging infringement of claims 1, 2, 3, 4, 6, 8, 10, 11, and 12 of Schmidt & Lee patent, 1,608,622, issued November 30, 1926, for a process for preventing the dissolution of iron and steel in pickling baths, and Gravell & Douty, 1,796,-839, issued March 17, 1931, for material for selectively controlling metal pickling baths. The case was heard by a master, who found all claims in issue, except claim 12 of Schmidt & Lee, invalid, and concluded that this claim was not infringed. He found all claims of Gravell & Douty valid, but not infringed. The findings and conclusions of the master were adopted and confirmed by the District Court.

Both patents relate to the composition of sulphuric acid pickling baths by which scale is removed from iron and steel articles. Scale is a surface contamination usually a ferrous or ferric oxide which is formed when the hot metal is exposed to the air. If not removed, it damages the roll and prevents production of fine sheet steel. A dilute sulphuric acid bath, from two to fifteen per cent by volume of ninety-three per cent sulphuric acid is generally used to remove the scale. This in turn creates serious problems, for the acid attacks the metal itself. Also through acid action on the surface of the metal, hydrogen ions liberated as atoms escape in the form of hydrogen gas. Bubbles formed from the gas break upon the surface of the bath and create unpleasant acid fumes. These fumes, in addition to being highly disagreeable, cause the teeth of workmen assigned to continuous service in the pickling room to be entirely eaten away. The solution of atomic hydrogen in steel causes the metal to become brittle, and also when the hydrogen in the metal encounters slag or sulphides, blisters occur, causing wasters.

In modern steel plants an inhibitor is used to arrest the action of the acid on the metal. The inhibitor forms a film of adsorbed material which impedes the release of the hydrogen and the consequent diffusion of the ferrous ions, thus minimizing the attack upon the metal and also lessening the consumption of the sulphuric acid.

While this suit was filed against appellee as user of certain inhibitors claimed to infringe, the defense has been conducted by the Monsanto Chemical Company, which is the parent company of the Rubber Service Laboratories Company, manufacturer of the inhibitors. The William M. Parkin Company bought the inhibitors and marketed them under its own trade-marks as NEP 100 and NEPowder. In 1935 a British chemical company claimed that the inhibitor manufactured by Rubber Service Laboratories Company infringed a British patent corresponding to Schmidt & Lee, and thereupon Rubber Service Laboratories Company endeavored to eliminate thioureas (the class of inhibitors disclosed by the Schmidt & Lee patent) from their product.[1] Since June, 1935, the old product (NEP Old) has been discontinued, and NEP New has been manufactured. Both of these chemical products are alleged to infringe. Each of them contains monophenyl and diphenyl thiourea, which are substitution products of thiourea, and they also contain ammonium thiocyanate. Appellant's experts stated that NEP 100 Old contains ten per cent and NEP 100 New contains 2.3 per cent of thiourea. The master found thiourea present in effective amounts in NEP 100 Old and in ineffective amounts in NEP 100 New. Both the old and the new compound contained large proportions of other inhibitors. NEP 100 Old was found not to contain any effective amount of thiocyanate, while NEP 100 New had about six per cent of this chemical.

### The Schmidt & Lee Patent

Claim 1 of the Schmidt & Lee patent is typical of the process claims, and

---

[1] Thiourea, as used in this opinion, means thiourea and its substitution products, unless otherwise specified.

claim 11 is typical of the product claims. They read as follows:

"1. A process for substantially preventing the dissolution of iron and steel in sulphuric acid which consists in adding thiourea and its substitution products to the sulphuric acid."

"11. A pickling bath for iron and steel products, comprising sulphuric acid containing a thio-urea body."

The master found that Schmidt & Lee, in teaching the effectiveness of thiourea in a pickling bath, made a novel and valuable contribution to the art, and that the patent should be given a liberal construction; but he concluded that the claims in issue, with the exception of claim 12, were invalid because the specification does not teach the use of thioureas as a class, and because the claims are not definite as to what is taught of the use of particular thioureas. He found claim 12 valid, but limited to thiourea only as distinguished from its substitution products.

No question of anticipation is involved. With reference to this patent, there is no prior art.

There were at the time of the trial 678 known thioureas. The specifications disclose three examples of the use of thiourea and thiourea substitution products in a pickling bath. No other thiourea substitution product is specifically named in the specification. Two examples describe the use of ditolyl thiourea and one the use of dixylyl thiourea. The specifications do not disclose which of the dixylyl or the ditolyl thioureas should be employed in the bath, although each of these substitution products embraces sub-classifications of thioureas. Appellee contended that many thioureas do not inhibit, and the master found that thioureas as a class are not usable for the purpose of the patent teaching, and that the patent therefore fails to make the disclosure required under the statute. He applied the rule that a class cannot be the subject of patent monopoly unless it appears that every member of the class has the characteristic relied upon for the patentable invention. The Incandescent Lamp Patent (Consolidated Electric Light Co. v. McKeesport Light Co.), 159 U.S. 465, 16 S.Ct. 75, 40 L.Ed. 221; Corona Cord Tire Co. v. Dovan Chemical Corp., 276 U.S. 358, 48 S. Ct. 380, 72 L.Ed. 610; Kalle & Co. v. Multazo Co., Inc., 6 Cir., 109 F.2d 321.

Appellant attacks this finding, made by the master and concurred in by the District Court, and therefore binding upon us in the absence of clear mistake. Reynolds Spring Co. v. L. A. Young Industries, Inc., 6 Cir., 101 F.2d 257. Bearing in mind that the burden of proving lack of patentability is on the appellee, and is a heavy one (Mumm v. Jacob E. Decker & Sons, 301 U.S. 168, 57 S.Ct. 675, 81 L.Ed. 983), we think that the finding is sustained by the requisite degree of evidence. Some thirty thioureas were subjected to exhaustive tests by qualified experts on behalf of the appellee, employing the gravimetric or loss by weight test. The gravimetric test is used in the illustration in the specification of the Schmidt & Lee patent, and is conceded by appellant's experts to be one of the usual tests. In the test of twenty-seven thioureas by Bartram, appellee's expert, under example one of the patent, ten had no inhibiting effect, eleven had very slight effect, one had fair effect, and only five had good effect. Under example 2 of the patent, 14 thioureas were tested, eight of which had no effect, and the remainder only very slight effect. Under example 3, of 18 thioureas tested, nine were ineffective, four had very slight effect, and five were satisfactory. The variations in testimony as to the effectiveness of these thioureas are explained by the ten per cent margin of error admitted in these calculations.

Appellant contends that all thioureas inhibit because they have the characteristic carbon-nitrogen-sulphur grouping which constitutes the active ingredient in producing the inhibiting effect. But the expert testimony relied on for this contention is so hedged about with reservation and qualification that there is no positive evidence upon the point. When an expert who is asked definitely to describe the active ingredient or grouping of the compound which does the work in the pickling bath answers, as did appellant's expert, that "apparently" it is a certain characteristic molecular structure, he has made no addition to the substantial evidence upon that subject. We conclude that appellant is not entitled under the patent to claim the use of thioureas as a class.

Schmidt & Lee could not secure the exclusive right to use the entire group of thioureas and thiourea compounds without showing that all of them had some general quality which makes them effective as inhibitors. Corona Cord Tire Co. v. Dovan Chemical Corp., supra; The Incandescent Lamp Patent, supra. The classification embraces chemical compounds which do not

answer to the description of the specifications. While thioureas, thiourea bodies and thiourea substitutes have a fundamental molecular grouping common to all, they do not react uniformly in respect to their effectiveness in achieving the inventive concept. Hence the claims for their exclusive use cannot be sustained. Kalle & Co. v. Multazo Co., Inc., supra.

The necessity for this ruling is all the more apparent because exploration in the field of thioureas is far from complete. Douty, appellant's expert, had tested appellee's products and had extracted monophenyl thiourea, diphenyl thiourea, and ammonium thiocyanate. He used a test which involved the measurement of the rate of evolution of hydrogen gas from a pickling bath in contact with the metal, and testified that this test showed that the particular thioureas tested by him not only are inhibitors, but have a synergistic effect greatly intensifying the inhibiting quality of the product. However, Douty, who is in charge of research work for appellant, has tested only some 25 of the 678 thioureas, and it is not shown that appellant has tested any additional thioureas. Appellee's experts, as above stated, have tested some 30 thioureas. Giving the appellant the benefit of any doubt as to the actual number tested, this record shows that at the most, less than ten per cent of the then known thioureas had been tested, so far as the parties herein showed at the time of trial. Douty stated that a great many of the substitution products had never been produced, and in explaining his tests also stated that while he followed accepted practice in analyzing for the presence of thiourea and ammonium thiocyanate, "it must be realized that in identifying unknown organic chemicals, it is ordinarily necessary to isolate them, and it was necessary for me to experiment for some time with the material before I found acceptable methods of isolating the materials, which I subsequently identified as monophenyl-thio-urea, diphenyl-thio-urea and ammonium thio-cyanate. * * *" In view of the limited authentic knowledge of the thiourea group, we think that it is peculiarly important not to deviate in this case from the salutary rule that a monopoly should not be extended to the use of a class of materials, some of the members of which are shown not to be effective in carrying out the inventive process. The state-

ment in The Incandescent Lamp Patent case, supra, 159 U.S. at page 474, 16 S.Ct. 75, 40 L.Ed. 221, is apposite. Here, as there, owing to the state of knowledge of this chemical field, a description covering but three examples of the use of thioureas is vague and uncertain with reference to the action of other thioureas, so that no one can know, except by independent experiment, how to use the other thioureas as inhibitors. Hence these claims are void because of indefiniteness.

Since the claims in issue, except claim 12, are invalid, it is unnecessary to discuss the question of their infringement.

The master held that claim 12 was limited to the use of thiourea, and not infringed because while appellee's inhibitors use thiourea substitutes, they do not use thiourea.[2] This claim reads as follows:

"12. A substantially non-iron dissolving solution, comprising sulphuric acid containing less than 1% by weight of thiourea."

Thiourea is a distinct chemical substance, differing from thiourea substitutes, and the patent distinguishes between them. Since claim 12 specifies the use of thiourea and names no other thiourea product, it is clear that the master was correct in his interpretation, and that the claim is not infringed.

## The Gravell & Douty Patent

This patent covered a pickling bath containing thiocyanate. Its claims read as follows:

"1. A pickling bath for metal comprising an admixture of water, acid and a thiocyanate.

"2. A pickling bath for metal comprising an admixture of water, acid, and ammonium thiocyanate."

The master limited the construction of these claims, and read them as comprehending a pickling bath composed of water, acid, and thiocyanate only. Appellee's product, NEP 100 Old, did not contain any practically effective amount of thiocyanate. NEP 100 New contains a practically effective amount of thiocyanate, combined with other effective inhibiting chemical substances.

We think that the limitation was rightly imposed. Questions of infringement of

---

2 The word "thiourea," in the discussion of claim 12, is used in a limited sense, as distinguished from thiourea substitutes.

patents for compositions of matter are peculiar to themselves. Infringement depends upon the identity or equivalence of the ingredients and upon substantial sameness of the proportions in which the ingredients are used. 3 Walker on Patents (Deller's ed.), § 489. It is not enough in such cases for the purpose of establishing infringement to show that some one else has made, by, using different ingredients, a composition that has the same useful qualities. Kaumagraph Co. v. Superior Trade Mark Mfg. Co., Inc., 2 Cir., 72 F.2d 417, 419. The proportions of thiocyanate used in appellee's pickling bath are different from those set forth in the patent, and the elements of the composition are substantially different. This avoids infringement. All that the appellant has shown here is that appellee, by using in a pickling bath ingredients, some of which are the same as those of appellant's patent, has made a composition of matter that has useful qualities for inhibiting, similar to those of appellant's product. Kaumagraph Co. v. Superior Trade Mark Mfg. Co., Inc., supra. Cf. American Chemical Paint Co. v. Reilly Tar & Chemical Corporation, 7 Cir., 110 F. 2d 720.

Also in view of the plain language of the patent claims and specifications, the claims are not infringed. The specifications discuss the addition of potassium cyanide to pickling baths in order generally to improve the art, and state that the use of this chemical not only prevents acid brittleness, but tends to protect the metal to a great extent against the acid action. However, they point out that the action of the potassium cyanide is not lasting, and that poisonous gas escapes from the bath. The specifications then go on to state:

"We have discovered that if we replaced the potassium cyanide by a substance that would react with the nascent hydrogen, developed by the reaction between the acid bath and the metal being pickled, to liberate hydrocyanic acid within the bath, new and surprising results were obtained, the bath ceased to stain the work or to liberate a noticeable or objectionable amount of poisonous fumes, and a very small quantity of the added substance produced a powerful and lasting effect in selectively controlling the bath, in that after the oxide or scale was removed from the work, the corrosive effect of the bath on the work was materially reduced or checked.

"Based on our discovery, we have invented a commercial process and a pickling adjunct which we will now describe."

It is then stated that the thiocyanates, and particularly ammonium thiocyanate, react favorably with nascent hydrogen to furnish hydrocyanic acid within the pickling bath. The concept of the patentee, then, is that the desired result is accomplished by the reaction of thiocyanate with the nascent hydrogen developed by the action of the acid on the metal. No other ingredient in the bath than acid water and thiocyanate is necessary to secure this result.

An example is given of practicing the invention by preparing a pickling bath consisting of 1,000 gallons of water, 50 gallons of sulphuric acid, 66% Baume, and one-half pound of ammonium thiocyanate. It is suggested that a foaming agent, such as rye meal liquor, saponian, or cellulose pulp waste liquor be added to obviate the breaking of the hydrogen bubbles on the surface of the bath. A specific example of the use of the foaming agent is given with the proportions of water, sulphuric acid, ammonium thiocyanate and the cellulose pulp waste liquor stated. While the specifications suggest that other acid than sulphuric, such as hydrochloric or phosphoric, may be substituted, or that the proportions of water, acid, the control material (ammonium thiocyanate) and the foaming agent, may be varied, there is no trace of a suggestion that other inhibiting ingredients should be used.

In addition, the file-wrapper supports appellee's claim that this patent should be narrowly construed. As originally written, the application presented 24 claims, of which claims 11, 12 and 13 were allowed. After various amendments and cancellations, the examiner rejected claim 11 as indefinite, because it did not state the substances which formed the composition of the bath. The claim read as follows:

"A pickling bath containing steel and a substitute from which nascent hydrogen liberates hydrocyanic acid."

The examiner pointed out that the bath does not contain steel, and also that the word "substitute" was not clear. The solicitor then cancelled original claim 11, and applied to have an amended claim inserted, reading as follows:

"A pickling bath for steel containing a substance from which nascent hydrogen liberates hydrocyanic acid."

This claim was rejected as indefinite and broader than applicant's disclosure, and not complying with R.S. § 4888, 35 U.S.C.A. § 33. The examiner stated:

"There may be many substances from which nascent hydrogen will liberate hydro-cyanic acid, which substances have not been disclosed by applicant and which substances will not act as inhibitors."

Appellant's solicitor then cancelled this claim, and proposed no substitute.

We think this file-wrapper history shows that the master was correct in limiting the construction of the patent.

If a claim reading, "A pickling bath for steel, containing water, sulphuric acid, and a thiocyanate," had been allowed, appellant's contention would have had more merit. Its proposed amendment of claim 11 described a pickling bath in general terms, and a pickling bath, under this record, might contain ingredients other than water, sulphuric acid, and thiocyanate. Appellant not only proposed no new claim, retaining the original general description of the pickling bath, but his patent solicitor stated that "applicant's invention is believed properly protected in its broadest aspects by allowed claims 12 and 13." These are the claims which now remain in the patent. These claims neither describe a bath with ingredients other than water, sulphuric acid and a thiocyanate, nor use the general word "containing." The claims definitely state that the pickling bath is comprised of water, sulphuric acid, and a thiocyanate, and the ingredients of both claims hence were limited by the applicant to the three named, and to these only.

Bearing in mind the purpose of the invention, namely, the liberation of hydro-cyanic acid within the bath, which is accomplished without ingredients other than those specified, and the precise statement of the ingredients of the bath, we agree with the master that the patentee invented a pickling bath composed of and limited to water, acid, and a thiocyanate. Since NEP 100 New contains substantial amounts of other effective inhibiting chemical substances, we conclude that the patent is not infringed.

In addition, we note that the use of animal distillate and glue, both of which contain ammonium thiocyanate, is old in the inhibiting art. If the patent were to be construed with such breadth as appellant contends, it would be invalid because of anticipation.

The decree is affirmed.