**FERMENT–ACID CORPORATION,**
Plaintiff-Appellant,

v.

**MILES LABORATORIES, INC.,**
Defendant-Appellee.

**FERMENT–ACID CORPORATION,**
Plaintiff-Appellee,

v.

**MILES LABORATORIES, INC.,**
Defendant-Appellant.

**Nos. 14353, 14354.**

United States Court of Appeals
Seventh Circuit.

Nov. 6, 1964.

Walter H. Free, New York City, Eugene C. Knoblock, South Bend, Ind., for Ferment-Acid Corp.

Stanton T. Lawrence, Jr., New York City, for Miles Lab., Inc.

Before DUFFY, KNOCH and CASTLE, Circuit Judges.

KNOCH, Circuit Judge.

This patent infringement suit was commenced in the United States District Court for the Southern District of New York. It was transferred to the Northern District of Indiana, South Bend Division, under 28 U.S.C. § 1404(a). Upon defendant's claim of trade secrets, the trial was held in camera.

We have before us an appeal and a cross-appeal from a final judgment. Plaintiff, Ferment-Acid Corporation, appeals from the dismissal of its complaint for patent infringement. Defendant, Miles Laboratories, Inc., hereinafter sometimes called "Miles," appeals from the dismissal of its second counterclaim which seeks damages for the expenses incurred defending the instant suit and for failure of the judgment to include an allowance for attorney's fees for the defendant. The appeals were consolidated.

■ The patent in suit expired on July 18, 1961, prior to the date of the trial in the District Court. Any relief to which plaintiff might be entitled would be confined to damages which accrued prior to that date.

United States Patent No. 2,353,771 was issued July 18, 1944, to Joseph Szüces and was assigned to plaintiff. The single claim in suit [1] relates solely to a process for producing citric acid by submerged or deep fermentation. The process utilizes a known citric acid-producing mold or fungus acting on an aqueous sugar solution.

The preferred mold or fungus called Aspergillus niger is a living organism. Plaintiff describes it as analogous to an animal which requires and consumes nutrients, digests them by absorbing what it needs, and excretes the altered residue as waste.

The patent in suit relates to an improvement in submerged fermentation involving the conversion of a carbohydrate (sugar) into citric acid by use of an organism—an aerobic [requiring oxygen] citric acid-producing fungus wherein the oxygen needed by the fungus is introduced into the fermentation vessel from the bottom, in contrast to surface or "flat pan" fermentation wherein the necessary oxygen is derived from the open air directly above the fermentation solution.

It was long recognized that the manufacture of citric acid by deep fermentation was desirable, but at the time the application for the patent in suit was filed, many skilled in the art thought that it was impossible.

Much was said at the trial about a distinction between a one-step and a two-step process. However, in both processes, the fermentation phase is identical. The patented process involves fermentation in the presence of sufficient oxygen, but in the substantial absence of fungus-assimilable phosphorus compounds in the fermentation solution.

The patent in suit clearly taught the art that it is assimilable phosphorus deficiency that results in fermentation of sugar to citric acid by a suitable mold or fungus in a deep fermentation tank, whether the operation is called one- or two-step. A more appropriate designation would appear to be one- or two-tank. However, in the trial the "step" phraseology was used. Citric acid production in the one-step process does not occur until the fungus is substantially deprived of assimilable phosphorus. The inventor preferred a two-tank process on the ground that the fully grown fungus would start its citric acid producing phase cleansed of residue, including accumulation of what the plaintiff calls "excreta." However, plaintiff contends that the one-step process is also taught in the patent.

Although it is agreed that a complete absence of phosphorus is not attained in the fermentation phase under the patent's teaching, the inventor directs that the amount of assimilable phosphorus compounds in the growth solution be limited so that substantially all of it is assimilated by the fungus once its desired growth is attained.

Miles contends that the presence, in biologically significant amounts, of assimilable phosphorus compounds in the fermentation phase of its process precludes infringement of plaintiff's claim in suit. The District Court agreed. Plaintiff contends that the phosphorus found in the fermentation phase of Miles' process consists in significant part of mere excreta which is not assimilable by the living organisms.

Because of the element of trade secrecy, the District Court appointed Arthur D. Little, Inc., an independent testing agency, to take samples at various stages during the fermentation cycle of a typi-

[1]. Claim 1 provides: "1. A method of producing citric acid by submerged fermentation, comprising fermenting a sugar material with a citric acid producing mold in an aqueous solution containing nutrient salts with the exception of assimilable phosphorus compounds, and supplying an oxygen-containing gas to said solution."

cal commercial run in Miles' plant with respect to the presence or absence of assimilable phosphorus compounds in Miles' process. The testing procedures to be followed were the subject of stipulation between the parties.

For similar reasons, we shall not describe the Miles' process in any detail. It concerns itself generally with control of cellular morphology and a careful choice of strain, from among the different strains of Aspergillus niger, to be particularly "tailored" to the Miles' process.

Dr. Lewis B. Lockwood, assistant director of Miles' biosynthesis laboratory, testified that the tests made did not indicate whether the use of a different strain of organism would give similar results. However, he concluded from the charts made of the tests that, with Miles' specific strain of Aspergillus niger, once growth was established in the first or primary stage in the growth solution, the presence or absence of assimilable phosphorus in the nutrient solution had no relationship to the production of the Miles' organism.

Merrick W. Shepard, manager of Miles' citric plant, and Dr. L. B. Schweiger, director of Miles' biosciences research laboratory, described Miles' techniques for flexible control of the environment to attain the desired cellular morphology.

Plaintiff argues that the procedures to which Miles' expert witnesses testified were in reality attributable to the need to dispose of impurities found in the crude and less expensive sugars, or introduced by contamination from the iron tanks used by Miles, and were unrelated to the production of citric acid. That argument presented an issue of fact which the Trial Judge decided adversely to the plaintiff.

Dr. Cecil Gordon Dunn, professor in the field of industrial microbiology at Massachusetts Institute of Technology, testified as an expert for plaintiff that the amounts of assimilable phosphorus present in Miles' process were "negligible." On cross-examination, Dr. Dunn agreed with the conclusion reached in the independent Little testing procedures, and in the parallel work by Dr. Lockwood, that phosphorus was present during the bulk of the Miles' fermentation period and that this was assimilable phosphorus. He also testified that his opinion that the amounts present were negligible was not supported by any experiments conducted by him, stating that he had done no work personally in the area.

■■ In the light of the other evidence, including not only the testimony of the Miles' experts, but also the evidence of the independent Little tests themselves and the testimony of Dr. Carl Shelley Miner, Jr., technical director of the Chicago Laboratories of the Little agency, called as the Court's expert witness, we must conclude that there was ample evidence in the record to support the District Court's finding that assimilable phosphorus compounds are present throughout the fermentation phase of the Miles' process in biologically significant amounts. We will not disturb a factual finding of non-infringement which is amply supported by substantial evidence, limiting our review to a determination of whether that finding of fact is clearly erroneous. Federal Rules of Civil Procedure, Rule 52(a); Armour & Co. v. Wilson & Co., 7 Cir., 1960, 274 F.2d 143; Minnesota Mining & Mfg. Co. v. Technical Tape Corp., 7 Cir., 1962, 309 F.2d 55. We must affirm the District Court's conclusion that the Miles' process does not infringe the patent claim in suit.

■■ We have carefully scrutinized the record with respect to Miles' contention that plaintiff has brought this action in bad faith and that Miles' counterclaim for fees and expenses should have been granted. An award of attorneys' fees is certainly neither usual nor customary in a patent case, never following as a matter of course from the decision of the case in the manner of ordinary costs. Laufenberg, Inc. v. Goldblatt Bros., 7 Cir., 1951, 187 F.2d 823. It is only in exceptional cases that the court may award reasonable attorneys' fees to the prevailing party. 35 U.S.C. § 285. The District Court evidently

found no such exceptional characteristics here. Neither do we. It is our considered *opinion* that the District Court did not err in holding that Miles had failed to sustain its burden of proof that this action was so lacking in a reasonable basis as to create a legal liability in plaintiff.

The judgments of the District Court are affirmed.

Affirmed.