**LOCTITE CORPORATION,
Plaintiff-Appellant,**

v.

**FEL–PRO, INC. and Felt Products Mfg.
Co., Defendants-Appellees.**

**Nos. 80–1828, 80–2347.**

United States Court of Appeals,
Seventh Circuit.

Argued Feb. 19, 1981.

Decided May 15, 1981.

---

Walter D. Ames, Washington, D. C., for plaintiff-appellant.

George B. Newitt, argued, Marshall W. Sutker, Talivaldis Cepuritis, on the brief, Chicago, Ill., for defendants-appellees.

Before SWYGERT, WOOD, and CUDAHY, Circuit Judges.

PER CURIAM.

In June, 1977, Loctite Corporation (Loctite) filed a patent infringement suit against Fel-Pro Incorporated and Felt Products Manufacturing Company (Fel-Pro) alleging infringement of three patents used in the production of anaerobic sealants and adhesives.[1] Each of these patents concludes with patent claims specifying a series of ingredients and the quantities of these ingredients which must be present. Loctite's burden was to prove the presence in the specified quantities of the allegedly infringing ingredients in Fel-Pro's products. Loctite's complaint identified neither the ingre-

dients nor the quantities. Fel-Pro's pursuit of this information and Loctite's steadfast refusal to divulge it is the crux of the three-year discovery process which ended in dismissal.

The dispute reaches this court on an appeal from its dismissal under Rule 37(b) of the Federal Rules of Civil Procedure[2] for Loctite's failure to comply with district court discovery orders and from the award of attorney's fees to Fel-Pro under 35 U.S.C. § 285,[3] based on this conduct. A review of the record shows that the dismissal and award of fees were clearly justified; we affirm the judgment of the district court on both issues, but remand for a redetermination of the amount of the fee award.

Loctite filed its initial complaint alleging patent infringement on June 24, 1977. On August 18, 1977, Fel-Pro served a deposition notice for Loctite's officer having the greatest knowledge of the infringement facts. Jean Mauro, Loctite's in-house patent counsel, was produced and deposed on September 17, 1977. During this deposition, Mauro refused to disclose the test results of defendants' products upon which Loctite based its complaint, stating that they were irrelevant and that they were protected by the attorney-client or work-product privileges, or both.

On October 25, 1977, Fel-Pro filed a motion to compel production of the data and test results upon which Loctite based its infringement charges. This motion was granted on March 20, 1978, the district court holding that the test data was not

---

**1.** A fourth patent was added by Fel-Pro in an amended counterclaim for declaratory judgment filed on February 28, 1979.

**2.** Rule 37(b) of the Federal Rules of Civil Procedure provides in pertinent part:

(b) Failure to Comply with Order.

\* \* \* \* \* \*

(2) *Sanctions by court in which action is pending.* If a party or an officer, director, or managing agent of a party or a person designated under Rule 30(b)(6) or 31(a) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under subdivision (a) of this rule or Rule 35, the court in which the action is

pending may make such orders in regard to the failure as are just, and among others the following:

\* \* \* \* \* \*

(C) An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party; . . . .

**3.** 35 U.S.C. § 285 (1976) states:

The court in exceptional cases may award reasonable attorney fees to the prevailing party.

protected by the attorney-client or work-product privileges. The court also dismissed the argument of irrelevancy: "Defendants have the right to refute plaintiff's evidence of infringement and information on these tests is clearly relevant for that purpose."

The test results were contained in two reports prepared by Loctite's experts, Dr. Leonard and Dr. Kubik. As a result of the March 20, 1978 order, Fel-Pro had reason to believe that Leonard doubted the accuracy of the test results. This was based on a statement made on October 6, 1977, by counsel for Loctite to counsel for Fel-Pro that Loctite was then uncertain whether the required ingredient, TBHP, was present in Fel-Pro's products. Loctite's counsel refused to allow questioning about Leonard's doubts as to the veracity of the tests. Fel-Pro was again required to ask the court to compel discovery in order to obtain answers to these questions about the tests. The magistrate's order of October 31, 1978, was affirmed by the district court on January 2, 1979.

In the interim, Fel-Pro filed a Motion for Partial Summary Judgment as to the one patent that required the presence of TBHP, asserting that there was no question of fact regarding the absence of TBHP in Fel-Pro's products. Loctite opposed this motion, stating in its brief, "Loctite believes Dr. Leonard's tests showing the presence of TBHP are correct." The motion for summary judgment was denied as a result of the apparent factual dispute. However, when Dr. Leonard was deposed in February, 1979, he stated that by October, 1977, he had become doubtful about the accuracy of the tests he had conducted on Fel-Pro's products in 1976 and that by April 13, 1978, he had become 85 to 90% certain that TBHP was not present in the Fel-Pro products. Dr. Leonard also stated that he had conducted no further tests that were directed toward the discovery of TBHP in Fel-Pro products.

On March 27, 1979, Fel-Pro filed a renewed motion for summary judgment as to the TBHP patent. This motion was grant-ed on May 24, 1979. Shortly thereafter, the court issued an order imposing sanctions on Loctite for its "clear breach of the duties plaintiff and plaintiff's counsel owe the court and opposing counsel to investigate and abandon an erroneous factual position...."

By July, 1979, Loctite, through answers to interrogatories posed by Fel-Pro, introduced the theory that a catalyst produced infringing ingredients in Fel-Pro products. However, Loctite again failed to specify the infringing product, the ingredient and the quantities contained in the product. Defendants had made available to plaintiff during discovery their secret formulations which allegedly revealed that their products did not contain the special catalyst which plaintiff claimed. Again, Fel-Pro requested an order from the court requiring Loctite to produce the documents which would substantiate or refute the charges of infringement. On September 4, 1979, the magistrate ordered Loctite to produce these documents; this order was affirmed by the district court on October 2, 1979. At the hearing before the district court on this motion, counsel for Loctite admitted that he instructed those conducting tests to refrain from reducing them to writing. The district court judge then ordered full disclosure of all information from any tests conducted by Loctite bearing on the alleged infringement by Fel-Pro. The court also ordered that Loctite be permitted to depose the Sartomer Corporation, a third party not involved in this appeal, only after it made reports of all test results. This deposition was never conducted. Loctite subsequently responded with some information, but claimed that other documents were unavailable.

On January 21, 1980, Fel-Pro filed a motion to require Loctite to comply with the orders compelling discovery or suffer dismissal. This motion was considered by the court along with Fel-Pro's motion of September 20, 1979, for an order to show cause why the complaint should not be dismissed for failure to specify by claim the ingredient and the quantity of the infringing in-

gredient. In its response to the January, 1980 motion, Loctite asserted that it was in compliance with the orders, but at the same time produced documents it had earlier claimed were unavailable because of a fire.

The district court, on March 6, 1980, entered an order dismissing the case. A motion for reconsideration was denied and a final judgment was entered, dismissing the action and granting an award of attorney's fees to Fel-Pro on the basis of Loctite's conduct and 35 U.S.C. § 285.

Assuming the March 6, 1980, order to be a final judgment, Loctite filed a timely motion to amend or alter the judgment under Rule 59(e) of the Federal Rules of Civil Procedure.[4] This motion tolls the time for filing a notice of appeal until the entry of an order disposing of the motion. F.R. A.P. 4(a)(4). After a May 9 hearing on the motion, the court issued a "minute order" on May 12 stating, "Motion of plaintiff to reconsider will be denied. Order to issue." Loctite assumed this to be the final order from which its time for appeal would run and filed a Notice of Appeal to this court on June 11, 1980. Shortly thereafter, on July 2, 1980, Fel-Pro challenged the Notice of Appeal as premature in a Motion to Dismiss addressed to this court. That motion was denied on August 14, 1980. The next day, on August 15, 1980, the district court entered an order awarding attorney's fees under 35 U.S.C. § 285. Loctite filed a timely notice of appeal from that judgment on September 15, 1980. The two appeals were consolidated for review by this court.

Under Rule 37(b)(2)(C) of the Federal Rules of Civil Procedure the court may order dismissal or default judgment in instances where a party "fails to obey an order or to provide or permit discovery." Invoking this rule, Judge McGarr ordered the dismissal of Loctite's suit for failure to comply with court orders compelling production of specific information as to infringing ingredients. Loctite objects to the dismissal as improper. Its main contention

is that Loctite complied with the March 20, 1978, order requiring specification by a letter dated March 24, 1978, containing a list of Fel-Pro's allegedly infringing products. Loctite implies that the district court was unaware of this letter, but that if it had known about it, there would be no reason for dismissal.

The letter, however, is an excellent example of the problems involved in this suit. While the March 20, 1978 order did not specifically state that Loctite had to include the particular ingredient and quantity found in Fel-Pro's products, it was evident from the surrounding circumstances that this was what was required. The order granted Fel-Pro's motion to compel discovery "as it relates to the Kubik and Leonard reports...." These reports, in order to form the basis of an infringement claim, had to include quantities and ingredients. Loctite sent only a list of products which it now claims amounts to full compliance.

Loctite finds support for this argument from the fact that a protective order was drafted subsequent to the March 24, 1978 letter. The court had earlier indicated that the protective order would be submitted after Loctite provided specification. Loctite argues that by submitting the protective order, Fel-Pro agreed that the proper specification had been made. Whatever reason Fel-Pro had for submitting the protective order, it is clear that it did not accept the March 24, 1978 letter as full compliance. Fel-Pro continued to request specification from Loctite. Significantly, Judge McGarr independently reviewed the letter and found it lacking.

Loctite's arguments stress literal compliance, but nowhere appear to recognize that it had a duty not only to comply minimally with what was ordered, but to assist in the resolution of the suit. Instead, Loctite balked at every attempt to clarify the issues; it now proffers technical arguments to induce this court to believe its conduct was acceptable.

---

**4.** Rule 59(e) provides:

    (e) Motion to Alter or Amend a Judgment. A motion to alter or amend the judgment shall be served not later than 10 days after entry of the judgment.

In addition to insisting that it has fulfilled the requirements of the court orders, Loctite sets forth numerous reasons for noncompliance. Loctite claims attorney-client privilege to avoid disclosure of its specific claims against Fel-Pro. In this same vein, Loctite attempts to justify its failure to produce test results ordered to be reduced to writing prior to the taking of the Sartomer deposition by claiming it unnecessary since Loctite did not depose Sartomer. Ironically, Loctite complains of overbreadth in the requirements of the discovery orders (and uses this reason to justify instructing Loctite's experts not to reduce their test results to writing) when Loctite itself refused to narrow the issue of its claims against Fel-Pro.

■ It was clear from the numerous directives of the district court and warnings about possible sanctions that discovery was not proceeding well. Yet Loctite chose to resist disclosure over assisting in the expeditious resolution of the suit. Its arguments on appeal are not persuasive. Loctite instituted and fought to maintain this patent infringement action. It was Loctite's duty to identify the basis for the suit. Infringement can only be proven where there is an identity of the ingredients in the same proportion as the patent claims provide. "It is not enough ... for the purpose of establishing infringement to show that someone else has made, by using different ingredients, a composition that has the same useful qualities." *American Chemical Paint Co. v. Firestone Steel Products Co.*, 117 F.2d 927, 931 (6th Cir. 1941). "[E]very element ... is conclusively presumed to be essential and therefore every element ... must be found in the accused device or there is no infringement." *McCullough Tool Co. v. Well Surveys, Inc.*, 343 F.2d 381, 391, 401–02 (10th Cir.), *cert. denied*, 383 U.S. 933, 86 S.Ct. 1061, 15 L.Ed.2d 851 (1965).

In a chemical patent, there is no way to show that these elements exist in the accused product without utilizing highly technical tests performed by experts. In order to establish that a justiciable controversy existed, Loctite had to have test results showing the existence of infringing ingredients in specific amounts in Fel-Pro's products. Thus, the production of the test results was not only relevant, but essential to the case.

■ Loctite's attempts to shelter them under the attorney-client and/or work-product privileges cannot stand. Only where the document is primarily concerned with legal assistance does it come within these privileges; technical information is otherwise discoverable. *Burlington Industries v. Exxon Corp.*, 65 F.R.D. 26 (D.Md. 1974). Furthermore, the privileges are not absolute. Where the benefit to the resolution of the suit outweighs the potential injury to the party from whom discovery is sought, as is clearly true in the case before us, disclosure is required. *See Hickman v. Taylor*, 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1946); *Maginnis v. Westinghouse Electric Corp.*, 207 F.Supp. 739, 743 (E.D.La. 1962).

In view of the evasiveness of answers given to interrogatories, the breadth of the documents ordered to be produced is understandable; somehow, there had to be a specification of the infringement charges. All parties knew that this was what was sought and what would have satisfied the orders. They were not so broad as Loctite would have us believe and certainly did not justify Loctite's evasive actions.

■ The trial judge, having dealt with the parties and issues in this suit for almost three years, has had the best opportunity to assess the need for the desired discovery and the degree of compliance. His findings are binding on us unless clearly erroneous. *Reese v. Elkhart Welding & Boiler Works, Inc.*, 447 F.2d 517, 520–21 (7th Cir. 1971); *American Chemical Paint Co. v. Firestone Steel Products Co.*, 117 F.2d at 929. Loctite's arguments that they should be reversed are unpersuasive. That the findings were submitted by counsel for Fel-Pro is not grounds for reversal. The adoption of findings of fact and conclusions of law submitted by a party is within the discretion of the trial court. Indeed, this court in *Reese v. Elkhart Welding & Boiler Works, Inc.*,

447 F.2d 517 (7th Cir. 1971), concluded that such submissions may be especially helpful in cases where the evidence is highly technical. *Id.* at 520. From our review of the record, we cannot say that the findings of the trial court were clearly erroneous. Thus, based on these facts, we must affirm unless the dismissal constitutes an abuse of discretion. *Id.*

In *National Hockey League v. Metropolitan Hockey Club, Inc.*, 427 U.S. 639, 96 S.Ct. 2778, 49 L.Ed.2d 747 (1975), the Supreme Court considered the propriety of dismissing a suit for failure to comply with discovery orders. The Court affirmed the district court's conclusion that where the plaintiffs' failure to file timely and complete responses to interrogatories showed " 'flagrant bad faith' " and " 'callous disregard' " of their responsibilities, dismissal of the suit was merited. *Id.* at 643, 96 S.Ct. at 2781.

■ The teachings of *National Hockey League* are particularly applicable here. The district court allowed the suit to proceed through three years of evasiveness and resistance to discovery. In that time, Fel-Pro was never fully apprised of the charges against it. Loctite's bad faith is especially evident in its failure to acknowledge that it had no basis for maintaining the action for infringement of the TBHP patent and instructing laboratory experts not to reduce test results to writing. While dismissal is an extreme sanction, the Supreme Court approved of its application, "not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Id.* It is especially appropriate in this case since appellants have failed to produce an essential element of the case, the specification of infringing ingredients.

The *National Hockey League* Court reminds us that in reviewing this issue, the question is not whether we would have chosen to dismiss this suit, but whether the district court abused its discretion in so doing. *Id.* at 642, 96 S.Ct. at 2780. We find no abuse of discretion in the order of the district court dismissing Loctite's suit.

Loctite also contends that the dismissal was constitutionally deficient in that it was denied an opportunity to be heard before the dismissal. Loctite labels the dismissal "sua sponte," implying that it had no notice that this sanction was being considered. However, a motion to dismiss was made on September 20, 1979, and again on January 20, 1980. The court had not yet ruled on either motion when the March status hearing was held at which Judge McGarr announced his intention to dismiss the case. While he did not specifically grant the motions, in substance his actions conformed with their requests. It cannot be said that Loctite was unaware of the possibility that the motions would be granted. Furthermore, Loctite's arguments in opposition to the motions clearly represent an opportunity to be heard.

Finally, Loctite was given an opportunity to be heard when the court entertained Loctite's motion to reconsider.[5] Loctite was permitted to file a memorandum in support of the motion and to present its argument orally to the court. There is no question that Loctite suffered no violation of its due process rights.[6]

We turn next to the question of attorney's fees. Under 35 U.S.C. § 285, "the court in exceptional cases may award reasonable attorney fees to the prevailing party." The district court, having determined that the conduct which led to the dismissal fell within the definition of "exceptional," awarded fees to Fel-Pro in the amount of $150,000.

---

5. Although the motion was labeled as one under Rule 59(e) of the Federal Rules of Civil Procedure to alter or amend a judgment, our discussion of the procedural issues in Section II, *supra*, indicates that there was no final judgment at that time. Thus, the motion was entertained as a motion to reconsider.

6. Additionally we note that an evidentiary hearing is not required prior to a Rule 37 dismissal where there has been adequate briefing on the circumstances surrounding the noncompliance. *Margoles v. Johns*, 587 F.2d 885 (7th Cir. 1978).

Loctite argues not only that the allowance of attorney's fees was unjustified, but that the district court was without jurisdiction on August 15, 1980, to make the award. The argument centers on Loctite's belief that the March 6 order was a final judgment, which, by its silence, denied Fel-Pro's request for attorney's fees. Were that so, Fel-Pro would have had to petition the district court under Rule 52(b) or Rule 59(e) to amend the judgment. Since Fel-Pro made no such motion, Loctite argues, the district court could not on its initiative amend its March 6 order in August to include the award.

In *Terket v. Lund*, 623 F.2d 29 (7th Cir. 1980), this court decided the question of whether the district court retained the power to award attorney's fees after the notice of appeal was filed on the substantive issue. Noting that the general rule of divesting the district court of "jurisdiction" does not refer to any statute or mandatory rule, the court explained that it is in the interest of minimizing duplication and delay to allow the district court to award fees in such instances. District courts in this circuit were directed to proceed with attorney's fees, "even after an appeal is filed, as expeditiously as possible." *Id.* at 34. Therefore, the *Terket* decision contemplated and approved the situation before us where an appeal is filed after both the substantive judgment and the award of fees, and then consolidated for review. There is no question that it was proper for the district court to have decided the issue of attorney's fees.

Section 285 allows the court to award reasonable fees in patent cases which are "exceptional." Thus, it is clear that fees are not to be allowed to all prevailing parties, *Ferment-Acid Corp. v. Miles Laboratories, Inc.*, 338 F.2d 586 (7th Cir. 1964), but that the award is reserved for situations involving willful misconduct or bad faith. *Super Products Corp. v. D P Way Corp.*, 546 F.2d 748, 758 (7th Cir. 1976). Although in many instances, the exceptional circumstances have involved a perpetration of fraud upon the patent office, the allowance of fees is not limited to those circumstances. *See L. F. Strassheim Co. v. Gold Medal Folding Furniture Co.*, 477 F.2d 818, 824 n.9 (7th Cir. 1973) and cases cited therein.

Our review of Loctite's course of conduct during the nearly three years of discovery supports Judge McGarr's conclusion that this case fits within the definition of exceptional. Appellant initiated suit with unconfirmed data to support infringement, refused to produce test reports which would substantiate the charges, and concealed a suspicion, later proven to be fact, that the test data was tainted and unreliable. Discovery was impeded at every juncture: Loctite's personnel were instructed not to make written reports of test results, interrogatories were only partially answered, evidence was concealed. Material misrepresentations in briefs and affidavits were left uncorrected. Finally, court orders compelling complete discovery were not complied with.

In *Strassheim*, this court affirmed an award of attorney's fees to plaintiffs because of the defendant's lack of diligence in its own investigation and in responding to discovery requests in advance of trial. Similarly, in *Skil Corp. v. Lucerne Products, Inc.*, 503 F.2d 745 (7th Cir. 1974), *cert. denied*, 420 U.S. 974, 95 S.Ct. 1398, 43 L.Ed.2d 654 (1975), we allowed an award of fees where the testimony of defendant was contrary to all documentary evidence and "amounted to an unconscionable act done with deceptive intent." *Id.* at 750. Fees were granted to defendants in *Ashcroft v. Paper Mate Mfg. Co.*, 434 F.2d 910 (9th Cir. 1970), where plaintiff misrepresented the character of exhibits, unnecessarily prolonged taking of depositions, and refused to obey a subpoena for documents for which it was found in contempt of court.

The district court's award of attorney's fees will not be disturbed absent an abuse of discretion. *Crane Co. v. Aeroquip Corp.*, 504 F.2d 1086, 1093 (7th Cir. 1974); *Rockwell v. Midland-Ross Corp.*, 438 F.2d 645, 655 (7th Cir. 1971). There is no abuse of discretion in this award. By its application to this case, the purpose of Section 285—to compensate the prevailing party for

 

the unwarranted cost of litigation caused by the misconduct of the losing party—is well served. *Mueller Brass Co. v. Reading Industries, Inc.*, 352 F.Supp. 1357, 1381 (E.D.Pa.), *aff'd*, 487 F.2d 1395 (3d Cir. 1973). Responsible action on the part of Loctite and its attorneys could have greatly alleviated the cost and extent of this suit. Indeed, with more care, parts of it may never have been brought at all. Therefore, we agree with the district court that this is "an exceptional case" within the meaning of Section 285.

Loctite points out that under Rule 37, attorney's fees are limited to those emanating from the abuse of the discovery process. *Stillman v. Edmund Scientific Co.*, 522 F.2d 798 (4th Cir. 1975). Our affirmance of the award as appropriate under 35 U.S.C. § 285 makes it unnecessary for us to speculate as to the correct amount of fees under Rule 37. However, we note that nearly *all* of the proceedings in this suit result from Loctite's initial failure to specify its charges against Fel-Pro. Thus, there can be little difference between the amount relating to the entire lawsuit and the amount flowing from the abuse of the discovery process.

While we believe that attorney's fees are merited, we are troubled by the amount of fees finally awarded by the district court. Although the amount is discretionary and should not be disturbed unless clearly excessive or insufficient, *Mercantile-Commerce Bank & Trust Co. v. Southeast Arkansas Levee Dist.*, 106 F.2d 966 (8th Cir. 1939), the language of 35 U.S.C. § 285 imposes a requirement of reasonableness. Therefore, we must review the amount to determine whether the requirement is met.

Fel-Pro initially requested fees totalling $233,757.78. That the district court believed this amount to be unreasonable is evident from the court's reduction of this amount to $150,000. Although the court found the rate charged to be reasonable and commensurate with those of the community, no reason was given for the reduction. It would require pure specula-

tion for us to pass on the reasonableness of the $150,000 figure. The fee schedules submitted to the district court include only the hours expended by the numerous attorneys and their respective billing rates. There is no way to tell if the rate charged for the particular work involved or the hours expended on that activity are reasonable. Whether the award is appropriate can only be determined after a review of a detailed schedule which includes the services performed, the attorney responsible for carrying out that service, the number of hours expended and the rate charged, and careful consideration of all other pertinent factors. *See Waters v. Wisconsin Steel Works*, 502 F.2d 1309, 1322 (7th Cir. 1974). We therefore remand this case to Judge McGarr for a reconsideration of the reasonableness of the fee award after submission to him of complete information regarding fee justification and computation.

For the foregoing reasons, we affirm the judgment of the district court dismissing the suit and awarding attorney's fees under 35 U.S.C. § 285, and remand for a reconsideration of the amount of the fee award.[7]

---

7. As we feel that the application of F.R.A.P. 38 is unwarranted in this case, we deny appellee Fel-Pro's motion for double costs.