**CONSTRUCTION PRODUCTS CORP., a Wisconsin corporation, Plaintiff,**

v.

**HAHN BUILDERS, INC., a Wisconsin corporation, Defendant.**

**No. 82–C–290.**

United States District Court,
E.D. Wisconsin.

Oct. 27, 1983.

Truman Q. McNulty, Mulcahy & Wherry, Milwaukee, Wis., for plaintiff.

Guenther W. Holtz, Andrus, Sceales, Starke & Sawall, Milwaukee, Wis., for defendant.

DECISION and ORDER

MYRON L. GORDON, Senior District Judge.

The plaintiff, Construction Products Corporation, holds U.S. patent 4,083,149, a drop vent ventilation system for animal confinement buildings. The plaintiff originally brought a patent infringement action against the defendant, Hahn Builders, Inc. (Hahn), in March, 1982. On September 21, 1982, the parties entered into a consent decree signed by the plaintiff's president, Andrew P. Jensen, and the defendant's

**640**

president, James Hahn, and approved by this court. In paragraph three of the decree, the defendant admitted that it had infringed the plaintiff's patent by installing a drop vent ventilation system. Paragraph four permanently enjoins the defendant or any of its employees or agents from again infringing the patent or inducing others to do so.

The plaintiff instituted contempt proceedings in May, 1983, alleging that the defendant violated the September 21, 1982, consent decree by inducing infringement of the patent by Kratz Farms, a family farm partnership consisting of a father and three sons located in Slinger, Wisconsin. An evidentiary hearing was held on September 23, 1983.

In October, 1982, shortly after Mr. Hahn had signed the consent decree, Hahn Builders was awarded a $71,000 contract to build a barn addition for Kratz Farms. The plaintiff's president, Mr. Jensen, learned of the contract and called the father, Robert Kratz, to inform him of patent restrictions on the drop vent system. Mr. Kratz replied that he would do as he pleased on his own farm.

The Kratzes were clearly interested in having a drop vent system for their new addition. They had visited two other farms to inspect buildings which featured the system. The Kratzes expressed their interest to Mr. Hahn, who informed them that he could not personally install such a system. Nonetheless, the cost of the system as well as the possibility that the Kratzes could themselves install it were discussed with Mr. Hahn.

Hahn completed the barn addition at Kratz Farms in January, 1983. Gaps four feet wide and one hundred feet long were left in the building's north and south walls, and the roof was furnished with a two-foot overhang on each side. Mr. Schellinger, Hahn's foreman, testified that these features had been provided in the past on projects where Hahn intended to install a drop vent system.

Mr. Schellinger and two other Hahn employees were laid off from February 7, 1983, until mid-March, 1983. During this time, they installed a drop vent system in the farm building which Hahn had just erected at Kratz Farms. During the period when the drop vent system was being installed, Mr. Hahn visited Kratz Farms, apparently in connection with another matter, and discussed the installation of the drop vent system with Rick Kratz, one of the brothers. In late March, 1983, Mr. Hahn rehired his three-man crew and returned to Kratz Farms to remodel a milking parlor.

In my view the evidence shows Hahn Builders to be in contempt of the September 21, 1983, consent decree. Hahn erected a farm building with four-foot by one hundred-foot gaps on each side and a roof with a two-foot overhang, knowing that such features are necessary for a drop vent system. Hahn also knew, or should have known from discussions with the Kratzes, that they intended themselves to install the drop vent system which Hahn was forbidden to install.

A party is liable for patent infringement "who, with knowledge of the infringing activity, induces, causes, or materially contributes to the infringing conduct of another." *Universal Studios, Inc. v. Sony Corp. of America,* 659 F.2d 963, 975 (9th Cir.1981), quoting *Gershwin Publishing Corp. v. Columbia Artists Management, Inc.,* 443 F.2d 1159, 1162 (2d Cir. 1971). Aiding and abetting falls within the definition of inducement. *Ingersoll-Rand Co. v. Rockwell International Corp.,* 420 F.Supp. 277 (N.D.Fla.1976). I find that Hahn aided and abetted the Kratzes in infringing the patent here by constructing a building designed to accommodate a drop vent system with knowledge that the Kratzes intended to install such a system. Therefore, Hahn itself is liable for infringement of the patent and is in contempt of the September 21, 1982, consent decree.

The consent decree also enjoins Hahn's employees from infringing the patent. Since Mr. Hahn bound his employees by the decree which he signed, he had a duty to inform them that they were forbidden to

infringe the patent. The evidence shows that Mr. Hahn failed in this duty. As a result, three of Hahn's employees participated in the installation of a drop vent system at Kratz Farms. That Hahn had temporarily laid off the employees is irrelevant. The testimony of Mr. Schellinger, the Hahn foreman, indicates that he considered himself a long-term Hahn employee and that he expected to be rehired, which he was. Because it had a duty to inform its employees of their obligations under the consent decree, Hahn is liable for its employees' patent infringement.

Under 35 U.S.C. §§ 284 and 285, the district court may award attorneys fees and multiple damages where it finds that an infringement has been wilful or in bad faith. *Loctite v. Fel-Pro, Inc.,* 667 F.2d 577 (7th Cir.1981); *Besly-Welles Corp. v. Balax, Inc.,* 291 F.Supp. 328 (E.D.Wis. 1968). I find that Hahn's contempt of the consent decree was wilful, both as to the inducement of the Kratzes' infringement and the failure to warn its own employees. The plaintiff's damages are to be calculated on the amount of royalty that the plaintiff would have received if its patented product had been installed under a license from the plaintiff and also a multiplier of 100%. The plaintiff is also entitled to its costs plus reasonable attorneys fees.

If the parties are not able to resolve the damages between themselves within thirty days, the court contemplates the appointment of a special master to review the matter and to make recommendations as to damages. The cost of the latter procedure would be charged to the defendant.

Therefore, IT IS ORDERED that the defendant be and hereby is adjudged in contempt of the consent decree entered by this court on September 21, 1982.