**INGERSOLL MILLING MACH. CO. v.
GENERAL MOTORS CORP.
No. 10763.**

United States Court of Appeals,
Seventh Circuit.

June 24, 1953.

Rehearing Denied Oct. 12, 1953.

Clarence B. Zewadski, Detroit, Mich., Harry W. Lindsey, Jr., and George N. Hibben, Chicago, Ill., for appellant.

Richard Russell Wolfe and Jarrett Ross Clark, Chicago, Ill., Carlson, Pitzner, Hubbard & Wolfe, Chicago, Ill., of counsel, for appellee.

Before MAJOR, Chief Judge, SWAIM, Circuit Judge, and BRIGGLE, District Judge.

SWAIM, Circuit Judge.

This is a suit for infringement of United States Letters Patent No. 2,186,-417, on a face mill cutter, issued to Charles E. Kraus and owned by the plaintiff, The Ingersoll Milling Machine Company. The District Court found the claims in suit, 1, 2, 10, 12, 15, 16 and 19, valid and infringed. Judgment was entered enjoining the defendant, General Motors Corporation, from further infringement and ordering an accounting for general damages sustained by the plaintiff. From this judgment the defendant appeals.

The opinion of the District Court, with findings of fact and conclusions of law, is reported at 110 F.Supp. 12. It contains a comprehensive discussion of the claims and specifications of the patent and of the issues present in this lawsuit. Reference is made to that opinion for a detailed explanation of the patent in suit.

The Kraus patent relates to a face mill cutter, a device used to remove or

scalp a layer of metal from a workpiece, leaving a smooth surface. Such a cutter is comprised, in part, of a series of rectangular blades arranged on the periphery of a circular head which revolves about an axis at right angles to the surface being cut. The main cutting surface of an unbeveled blade is its peripheral or outer edge. It was customary before Kraus to position the blades in the cutter head at such angles as would impart desired degrees of positive rake and shear angles to these cutting edges. The engineering handbooks in the art disclosed to designers the magnitudes of positive rake and shear angles proper for work with various kinds of metal with blades of various materials.

The "rake" of the blade is its tilt or lean with respect to the direction of its motion. If the blade is tilted backwardly from the direction of its motion it is at a positive rake angle; if the blade is tilted forwardly it is at a negative rake angle; and if there is no tilt at all the rake angle is zero degrees.

The "shear" angle of the blade is its slant diagonally to the direction of its motion which causes it to cut with a shearing motion rather than with a sudden impact along the entire length of the cutting edge. When the blade is tilted at such an angle to the direction of its motion that the cutting portion of the blade farthest from the blade point does the first cutting the blade is cutting at a positive shear angle. If the first cutting is done by the opposite portion of the blade then the blade is said to be cutting at a negative shear angle.

It later became a frequent practice among cutter designers to place a bevel on the lower corner of each blade, primarily to reduce the shock of the blade when it entered the work. The effect of this was to transfer the main cutting surface of the blade from its outer edge to the beveled edge. Unknown at the time to those skilled in the art, this affected the rake and shear angles actually effective on the cutting edge. Kraus was the first to discover, many years after the beveling technique was first introduced, that shifting the cutting to the beveled edge altered radically both the rake and shear angles which are effective on the bevel. Thus, although the advantages of positioning the cutting edge of the blades of the old conventional cutter type at certain degrees of positive rake and shear were well known, no one knew, until Kraus made his discovery, how to utilize effectively that principle on cutters with beveled blades.

Kraus then ascertained that by positioning the blade at an apparent negative rake angle, and by variously adjusting the magnitudes of the apparent rake and shear angles, actual positive rake and shear angles of the desired values could be achieved on the bevel, or cutting, edge. Accordingly, he states that the general aim of his invention "is to provide a beveled blade metal removing cutter in which the position of each blade relative to the cutter body is correlated with the bevel on the blade in a novel manner such that the beveled edge portions act on the work at effective rake and shear angles which are proper for efficient cutting of the work material to be operated on."

Claims 1 and 2 relate, in part, to a beveled edge cutter having a shear angle of more than 15 degrees on the beveled cutting edge. Pertinent portions of claims 10, 12, 15, 16 and 19 provide, in substance, for a beveled edge cutter with blades positioned at apparent negative rake and apparent shear angles of related magnitudes and correlated with the magnitude of the bevel, so that the rake and shear angles effective on the beveled edge are of positive sign and magnitudes suited for efficient cutting of predetermined metal. The defendant denies the validity of all the claims in suit. Infringement of claims 1 and 2 is denied, but it is admitted that if claims 10, 12, 15, 16 and 19 are valid, they are infringed.

It is the defendant's principal contention that the patent in suit is invalid because it is anticipated by the

prior art. In this respect, the defendant relies solely upon the so called Ingersoll Type W cutter, a line of face mill cutters manufactured and sold by the plaintiff company during the years 1915 to 1929. The physical characteristics of the Type W are very similar to those of the cutter disclosed by Kraus. It is a rotary face mill cutter designed to mill aluminum. The blades are beveled on the lower outside corner, so that the main cutting surface is located on the bevel. It is true that on the Type W cutter the blades were so positioned that they did have apparent negative rake with positive rake and shear ordinarily effective on the bevel. The District Court found, however, that designers of the Type W cutters were not aware of the rake and shear angles actually effective on the beveled cutting edge, and that in that type cutter the blades were so positioned that the angles on the bevel did not approach the values required for efficient operation.

There was evidence that the effective angles on the Type W cutters varied from 3 degrees negative to 12½ degrees positive rake, and from 2 to 11½ degrees positive shear. These variations apparently resulted from the method constantly followed of positioning the blades in the cutter head. They were always placed at an apparent shear angle of 10 degrees, and with the front face a blade width in front of a radius of the cutter, thus imparting apparent negative rake, regardless of the diameter of the cutter head and the degree of bevel on the blades. It does not appear that designers of the Type W were concerned with effective angles and, as the evidence shows, those varied rather widely. But in no instance did they exceed 12½ degrees positive rake and 11½ degrees positive shear.

Claims 1 and 2 of the patent call for an effective shear angle on the beveled edge of more than 15 degrees. There can be no serious contention that those claims are anticipated by the Type W cutter. The other claims in suit require positive rake and shear angles effective on the beveled edge of magnitudes suited for efficient cutting of predetermined metal. It is strenuously urged that those claims are anticipated.

The crux of the defendant's argument is the theory that the term "efficient cutting of predetermined metal," as used in the patent, refers only to the requirement that the cutter must leave a smooth surface, without regard to depth of cut, the rate of feed, or other elements which might go to comprise general operating proficiency. If this theory were correct, there would be little question but that the Kraus patent is anticipated. For it appears that all elements in claims 10, 12, 15, 16 and 19, except that requiring positive effective rake and shear of magnitudes suited for efficient cutting of predetermined metal, are found in the Type W cutter. And it is not disputed that the Type W cutter, if employed to remove aluminum at a certain depth and at a certain rate of feed, is capable of leaving a smooth surface.

However, the District Court found, properly so we think, that [110 F.Supp. 38]: "The references in the claims and in the specification to effective rake and shear angles for efficient or effective cutting of predetermined materials are, in the parlance of cutter designers, references to tabular data on precise sizes of angles best suited for each material and available to workers in this field long before Kraus."

Thus Kraus was concerned with more than simply a smooth surface. He wanted to utilize effectively the principle of employing positive rake and shear on the cutting edges of a beveled blade cutter by insuring that those edges carried the angles recommended in the handbooks for a given kind of metal. The "predetermined metal" relevant to the present inquiry is aluminum, since that is the material upon which the Type W cutters were designed to operate. The handbook tables referred to by the District Court recommended 15 degrees rake and 15 to 40 degrees shear for blades oper-

ating on aluminum. There is no question but that the rake and shear angles of the Type W cutters on the bevel did not begin to approach those values.

The District Court witnessed motion pictures of comparative tests run on a cutter built in accordance with the teachings of the Kraus patent and on one constructed from a Type W drawing, and heard the plaintiff's expert witness, Fishleigh, testify regarding the results of those tests. The evidence indicated overwhelming superiority in performance by the sample Kraus cutter over the Type W model. It produced satisfactory chip flow and left an unscored surface at far greater rates of feed than those at which the Type W was able to function.

The District Court found that the Type W cutters did not have effective rake and shear angles on the bevel of magnitudes specified by the handbook data for efficient cutting of aluminum; that the cutting of which they were capable was slow and produced poor chip flow; and that they did not anticipate any claim in issue. Rule 52(a) of the Federal Rules of Civil Procedure, 28 U.S.C.A., requires that we accept this finding unless we can say that it is clearly erroneous. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672; Hazeltine Research, Inc. v. Admiral Corporation, 7 Cir., 183 F.2d 953. It is not our function, but rather that of the District Court, to determine the probative value of the tests conducted by the expert, Fishleigh, and to evaluate the testimony and other evidentiary material relating to anticipation. Certainly the District Court's finding on that question is amply supported by the evidence. We find no circumstances in this case such as would justify our disregarding it.

The defendant's objection to the finding of non-anticipation is premised largely upon its theory regarding the meaning of the term, "efficient cutting of predetermined metal." But, as we have stated, the District Court specifically found that that element of the claims

refers to available handbook recommendations for the rake and shear angles proper under various stated operating conditions. It thus embraces precise numerical values, determinable by anyone experienced in the art. And it was, therefore, expressly found as a fact that the patent is sufficiently definite to enable one skilled in the art to produce a cutter embodying the invention, and to ascertain whether a particular cutter falls within the patent. The defendant complains that the handbooks are not standardized, that they are revised from year to year, and that consequently the claims of the patent, if indeed they refer to the handbook recommendations, have no fixed scope. This argument is not without a certain logical appeal. Nevertheless, the uncontradicted evidence is to the effect that one skilled in the art could produce a cutter embodying the invention and could determine whether a particular cutter is an infringement of the patent. To disregard this evidence and the attendant finding would require us to enter the realm of pure speculation. Therefore, we find no merit in the further contention that claims 10, 12, 15, 16 and 19 are indefinite because they fail to specify the magnitudes suited for efficient cutting of predetermined metal. See Eibel Process Co. v. Minnesota & Ontario Paper Co., 261 U.S. 45, 65, 43 S.Ct. 322, 67 L.Ed. 523.

The argument that the claims are functional is likewise, in part, based on the same erroneous theory that "efficient" cutting means only "smooth" cutting. What we have said is sufficient on that point. Neither do we find functionalism from the fact that the rake and shear values depend upon the kind of metal to be cut. It is apparent from the record in this case that cutters are manufactured to cut on a specified metal or type of metal. Necessarily, the material upon which the machine is to operate affects the rake and shear to be employed on the blades. That is a characteristic inherent in the art of face mill cutting. We do not think the claims are function-

al, simply because they are drawn to encompass this necessary range of angle variation.

It is next contended that claims 1 and 2 are not infringed. Each of those claims requires effective shear of more than 15 degrees. The accused cutters have effective shear of 12½ and 14 degrees. However, the District Court found that the accused devices are substantially similar to the cutter as disclosed by Kraus, that they operate in substantially the same manner and produce substantially identical results, and that they are the equivalent of the cutter as disclosed in claims 1 and 2 of the patent. The evidence on this point was extensive, including motion pictures of comparative tests, still photographs, chip samples and testimony by the expert, Fishleigh. He explained that the defendant was able to diminish the effective shear below the value stated in the claims and still achieve efficient operation by substituting blades made of tungsten carbide for those of high speed steel. The defendant, of course, attacks this testimony upon which the court relied. But again, the issue is one of fact which has been resolved against the defendant, and it is not for us to evaluate the evidence. As the Supreme Court stated in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 609–610, 70 S.Ct. 854, 857, 94 L.Ed. 1097:

> "A finding of equivalence is a determination of fact. Proof can be made in any form: through testimony of experts or others versed in the technology; by documents, including texts and treatises; and, of course, by the disclosures of the prior art. Like any other issue of fact, final determination requires a balancing of credibility, persuasiveness and weight of evidence."

Despite the objections to the finding strenuously urged by the defendant, we cannot say that it is clearly erroneous. We note, although the matter is not strongly pressed, that this question has no relation to that of anticipation by the Type W cutter.

We find little of substance in the other points raised by the defendant. The plain language of claims 3 and 13 supports the District Court's finding that the latter, which was retained in the patent, is distinguishable from the former, which was disclaimed. Both claims purport to describe a cutter having positive rake effective on the bevel. The defendant's own expert, Goddard, stated that to achieve such positive effective rake requires three coacting elements, namely, a bevel angle, negative apparent rake, and positive apparent shear. Claim 13 includes those three necessary elements, while claim 3 is silent as to apparent shear. That claim 3 purports to disclose a cutter with positive effective rake does not mean that the essential element which is lacking is necessarily implied. We think it is simply the fact that the claim is vitally deficient. Claim 13 contains this element, and it is, therefore, manifestly distinguishable.

Finally, it is argued that the plaintiff unreasonably delayed in filing a disclaimer after it became aware of prior art invalidating some of the claims, and that claim 3, which was disclaimed because of the Type W cutter, was not included in the patent by inadvertence, accident or mistake. The District Court considered these issues at length and entered findings that the invalid claims had been included in the patent by mistake and that there was no unreasonable delay in filing the disclaimer. These findings are supported by testimony and by inferences clearly within the province of the trial court to draw.

The judgment of the District Court is

Affirmed.