**Terrell J. REESE and Reese Products, Inc., Plaintiffs-Appellees,**

v.

**ELKHART WELDING AND BOILER WORKS, INC., Defendant-Appellant.**

**No. 18292.**

United States Court of Appeals,
Seventh Circuit.

Aug. 16, 1971.

---

1. See NLRB v. Amalgamated Clothing Workers of America, 5 Cir., 1970, 430 F.2d 966.

of the ensuing action are no less real even though attributable to elementary laws of physics pertaining to aligned and attached moving bodies.

Harold J. Reese, plaintiff herein, essayed at the elimination of one of the problems besetting the motorist, i. e., the elimination of side-sway under certain operational conditions on the part of the drawn trailer, with the result that on July 13, 1965 he was granted by the United States Patent Office patent 3,-194,584. Subsequently, Reese assigned the patent to Reese Products, Inc., also plaintiff herein, who had theretofore been the exclusive licensee of the patent. Because of the identity of interest, the plaintiffs will hereafter collectively be referred to as "Reese." The patent appeal is from a judgment of the district court finding the patent valid as to claims 5, 7 and 9,[1] and infringed directly and contributorily by Elkhart Welding and Boiler Works, Inc. (Elkhart). Elkhart, loading both barrels of its appellate gun, denies both validity and infringement.

The progress of the litigation in the district court was marked by the due deliberation which seems to be characteristic of patent infringement cases. However, in considering hereinafter the impact of Rule 52(a), Fed.R.Civ.P., we will not be unmindful that the district judge was afforded ample time for careful consideration of the issues which were exhaustively presented in trial and post-trial briefs and that he obviously advantaged himself of that opportunity.

The complaint was filed on March 29, 1966, and the case was put at issue shortly thereafter by the defendant's answer and counterclaim and the plaintiff's reply. Intervening discovery procedures occurred and the case was tried for five days in May of 1968. On March 6, 1969, Judge Grant announced from the bench that he had had a rather firm notion

Raymond C. Nordhaus, Chicago, Ill., Marmaduke A. Hobbs, South Bend, Ind., for defendant-appellant; John A. Dienner, Chicago, Ill., of counsel.

Eugene C. Knoblock, James D. Hall, South Bend, Ind., for plaintiffs-appellees.

Before HASTINGS, Senior Circuit Judge, and CUMMINGS and PELL, Circuit Judges.

PELL, Circuit Judge.

Without our resorting to judicial notice, we cannot be unaware that the average automobilist, who for the first time has hitched a trailer to his vehicle and has naively opined that the operational pattern of the dual assembly would not differ from that of a single conveyance, must have come to the conclusion that some sort of a poltergeist had selected him as a target. The vagaries

---

1. Although the patent-in-suit contained thirteen claims, plaintiff elected for the purposes of the action to base the charge of infringement upon claims 5, 7 and 9, asserting that the election was for the purpose of simplifying the issues at trial and did not represent the complete extent to which the infringement existed.

of what the weight of the evidence was at the time the case was tried and that a study of the post-trial briefs had confirmed his earlier opinion. He then followed with an analysis of the issues leading to a determination of validity and infringement and he advised the plaintiff to submit proposed findings of fact and conclusions of law in accordance therewith.

The proposed findings and conclusions were submitted in due course and defendant filed written objections thereto, which, after consideration by the court, were in effect overruled when the court on November 25, 1969 adopted and entered the proposed findings of fact and conclusions of law. Judgment was entered accordingly on December 19, 1969.

While a passage of approximately three and a half years from complaint to judgment is noted, an examination of the record indicates that this in substantial part was due to the careful attention to the complex issues by both counsel for the parties and the judge.

■ Elkhart vestibularly complains that the district judge wrote no opinion and prepared no findings but adopted the findings and conclusions prepared and submitted by Reese. While this procedure has been criticized, United States v. El Paso Natural Gas Co., 376 U.S. 651, 656–657 n. 4, 84 S.Ct. 1044, 12 L.Ed.2d 12 (1964), such practice is certainly within the trial court's discretion and indeed can be of considerable assistance to a trial court in a case where the evidence is highly technical, Heterochemical Corp. v. United States Rubber Co., 368 F.2d 169, 172 (7th Cir. 1966). We are not persuaded by Elkhart's brief and oral argument, nor by the record itself, that there has been any abuse of discretion in the case now before us.[2]

Another threshold contention advanced by Elkhart concerns the extent to which and the light in which we might examine and evaluate the evidence submitted below. Elkhart argues that particularly when findings and conclusions are based wholly or largely upon a consideration of documents and physical exhibits, the court of appeals has the right to interpret such evidence for itself and is as equally competent as the trial court to do so. Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1229 (7th Cir. 1969).

■ In the case before us, while there were numerous exhibits introduced into evidence, there was also substantial testimony by witnesses in connection with these exhibits. Here, then, we are limited in our review of the findings of fact to a determination of whether or not they are clearly erroneous. This rule is well established and was clearly stated by Judge Castle in Wahl v. Carrier Manufacturing Co., 358 F.2d 1, 3 (7th Cir. 1966), where he said:

"Therefore, insofar as the detailed findings of the court, upon which it predicates its conclusions of validity and infringement, concern factual issues such as the use made of prior art, the nature of the improvement made over prior art, and the characteristics and operational functions of the patented structure and the accused apparatus, Rule 52(a) of the Federal Rules of Civil Procedure (28 U.S.C.A.) applies. The court heard the testimony of expert witnesses in connection with these matters and witnessed the demonstration of the physical exhibits, including the operation of the accused apparatus. The scope of our review of such findings is therefore limited to a determination of whether or not they are 'clearly erroneous'. Armour & Co. v. Wilson & Co., 7 Cir.,

---

2. Unfortunately, the findings of fact and conclusions of law adopted by Judge Grant, which consist of some eighteen pages of legal size paper and which set forth a complete exposition of the issues here involved, have not been published. We therefore have had to set forth some of these matters in greater depth in this opinion than would otherwise have been necessary.

274 F.2d 143, 151–157; Minnesota Mining and Mfg. Co. v. Technical Tape Corp., 7 Cir., 309 F.2d 55, 57; Aerosol Research Company v. Scovill Manufacturing Co., 7 Cir., 334 F.2d 751, 753. If they find support in the evidence we are bound thereby and there remains but the question of whether the court applied the correct legal criteria in reaching the ultimate conclusions it did."

This rule is in contrast to that applicable where the evidence is entirely documentary, with physical exhibits. *See,* Nasco, Inc. v. Vision-Wrap, Inc., 352 F. 2d 905, 908 (7th Cir. 1965), again written by Judge Castle.

We must make allowance for the advantages possessed by the trial court in appraising the significance of conflicting testimony and reverse only "clearly erroneous" findings. Graver Tank & Mfg. Co. v. Linde Air Products Co., 336 U.S. 271, 275, 69 S.Ct. 535, 93 L.Ed. 672 (1949).

Departing at this point from the naive motorist's simplistic concept that a trailer hitch is merely a socket on a bar which fastens over a ball on the posterior of his automobile, we must embark to some extent on the technical nomenclature apparently implicit in all patent cases.

As an initial matter, we note the state of the art prior to the development of the patent in controversy as established by the evidence.

Both Reese and Elkhart have been engaged for some years in the business of manufacturing and selling trailer hitches. Earlier models are not now produced but in 1957 Reese commenced production of a spring bar type hitch known as the Bar-Level hitch. This hitch transfers a part of the load of a trailer to the front wheels of the towing vehicle.

The Bar-Level hitch consists of a ball mount fixedly carried by and projecting from the rear of the frame of a towing vehicle and carrying a hitch ball to which a trailer is pivotally connected by means of a coupler carried by a projecting tongue and A-frame at the front of the trailer. The ball mount has a pair of oppositely laterally projecting portions at each of which is pivoted a trunnion carried by the forward end of each of a pair of elongated spring bars. The spring bars extend along opposite sides of the tongue of the trailer and are suspended at their rear free ends by means of chains which are anchored to the trailer tongue at brackets positioned rearwardly of the hitch ball and coupler. By proper positioning of the chains, the spring bars are flexed upwardly and thereby tensioned to cause a part of the weight at the front of the trailer to be transmitted to the frame of the towing vehicle in a manner to ensure that it is transmitted and distributed to both the front steering wheels and the rear wheels of the towing vehicle.

This particular hitch was the basis of a patent issued to Reese on September 13, 1960, 2,952,475 (Reese Patent I).

It has been necessary to describe the apparatus and function of Reese Patent I because of the contention, *inter alia,* of Elkhart that the patent in question, Reese II, is in effect merely a variation of and no invention over Reese I.

Elkhart has produced for a number of years a hitch known as the Bock Bar-Equalizing hitch whose basic construction, apart from minor details of construction, is similar to plaintiff's Bar-Level hitch. Elkhart's Bar-Equalizing hitch was produced by that company under license from Reese.

While hitches of the type just described were accepted and widely used, it was recognized in the art that problems nevertheless existed. A particular problem was that of side-sway resulting from side winds or from passing trucks or buses, especially during high speed travel. Terrell Reese's conception of the invention of the hitch involved in Reese Patent II commenced in 1962 and was first the subject of a sale in 1963.

The principal difference between Reese Patent I and Reese Patent II was the

provision for adjustable but rigid members carried by the towing tongue of a trailer for support of the rear or free ends of the respective spring bars at opposite sides of the tongue and the providing of interengaging cams and cam follower means between the supports and the spring arms.

Reese's contention, which we find adequately supported by the evidence, is that by this construction the cooperating cams and cam followers increase the flexure of both spring bars regardless of the direction of the turn of the vehicle and the resulting forward or rearward endwise movement of the spring bars. At the same time, it is contended, turns and the tendency toward side-sway are resisted by virtue of the fore and aft cam surfaces engaged by the respective cam followers. Further, the construction assertedly reduces a rapid or abrupt flexing of the springs upon a turn which sharply increases the force exerted and transmitted by the springs to the front steering wheels which improves control upon a turn. Finally, it was argued that after a turn the construction would result in a prompter realignment and retention of straight travel alignment without over correction or opposite swinging movement. The drawings in Reese Patent II illustrate a number of different arrangements and variations of the hitch including the use of a roller engaging the cam surfaces.

Elkhart urges invalidity in several respects. The first is that the patent claims did not satisfy the requirements of 35 U.S.C. § 112 which provides in part:

"The specifications shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention."

The Supreme Court has interpreted this statutory requirement of particularity and distinctness as being met "only when [claims] clearly distinguish what is claimed from what went before in the art and clearly circumscribe what is foreclosed from future enterprise." United Carbon Co. v. Binney & Smith Co., 317 U.S. 228, 236, 63 S.Ct. 165, 170, 87 L. Ed. 232 (1942).

Applying this test, Elkhart contends that the Reese Patent II claims fail to meet the statutory requirement because: (1) they are not confined to, and hence overclaim, the alleged invention and (2) they are vague and indefinite in regard to the alleged invention.

The overclaiming argument is based on the premise that Reese Patent II constitutes only an improvement of one part of an old combination. Relying on Lincoln Engineering Co. v. Stewart-Warner Corp., 303 U.S. 545, 549–550, 58 S.Ct. 662, 82 L.Ed. 1008 (1938); Holstensson v. V-M Corp., 325 F.2d 109, 125 (6th Cir. 1963); and Hobbs v. Wisconsin Power & Light Co., 250 F.2d 100, 106-107 (7th Cir. 1957), for the proposition that an old combination cannot be patented as a new invention by the mere improvement of one of the elements in the combination, appellant argues that Reese Patent II is void since it purports to cover the entire combination and is not limited to the improvement of the single element.

██ If the new element is simply an improvement of one part of an old combination, then the patent claim must be limited to the improvement or the entire patent is void. Lincoln Engineering Co., *supra*, 303 U.S. at 549–550, 58 S.Ct. 662; E. J. Brooks Co. v. Stoffel Seals Corporation, 160 F.Supp. 581, 592 (S.D.N.Y. 1958).

██ However, in the present case all of the elements of claims 5, 7 and 9 of the Reese Patent II must cooperate to perform the new sway resisting function and result. The trial court specifically found that four distinct new functions flow from the cooperation of the parts of the Reese hitch II.[3] Rather

3. Following is paragraph number 20 of the trial court's findings of fact:

"The results of the cooperation of the parts of the hitch of the patent in

than a simple substitution of one element for another, the Reese Patent II provides a change of structure and operation compared to the construction and operation of pendulous spring bar hitches. The added elements of the V-shaped cam and cam follower together with the arrangement for relative movement of the spring bar on the support produce a difference in the forces which act upon the tractor and trailer, thus producing the advantage of resistance to side sway which the pendulous spring bar hitches did not adequately achieve.

Therefore, the cases relied upon by Elkhart are not controlling because each case contains language which limits its holding to situations where the claimed combination performs no new function or result. Lincoln Engineering Co., *supra*, 330 U.S. at 549, 58 S.Ct. 662; Holstensson, *supra*, 325 F.2d at 118 and Hobbs, *supra*, 250 F.2d at 106.

■ In holding against Elkhart on this contention, we are applying, as this court often has before, the well-established rule of law that a novel combination of elements, whether all new, or all old, or partly old, which so cooperate as to produce a new and useful result or substantial increase in efficiency is patentable. Minneapolis-Honeywell Regulator Co. v. Midwestern Instruments, Inc., 298 F.2d 36, 38 (7th Cir. 1961).

Likewise we find no merit in Elkhart's contention that the claims are invalid for vagueness and indefiniteness. It is argued that the claims fail to define properly the invention of Reese Patent II because the shape or design of the space cams is not defined, the orientation or size of the V-shaped cam recess is not indicated and the function of the cams or recess is not specified. Therefore, it is asserted that the patent is invalid because the claims lack structural or functional limitations necessary to define properly the disclosed invention.

More particularly, Elkhart maintains that the terminal clauses of the three claims in question fail to include the essential features of the Reese Patent II hitch which distinguish the function of that hitch from the Reese Patent I hitch. Referring to Reese Patent II and sales literature describing the hitch supposedly manufactured thereunder, Elkhart asserts that the alleged invention of Reese Patent II concerns the provision of (1) bi-level cams for producing a leaning action in curves and (2) positive cam detent action for straight line positioning. Appellant, referring to trial testimony which it claims indicates an admission on the part of plaintiff's witnesses that the distinction of Reese Patent II hitch over the prior art resides in the shape of the cam and the seating of the spaced cams on the knuckle, asserts that since neither of these features appears either structurally or functionally in the claims in issue, said claims therefore fail to point out particularly and distinctly the invention.

■ In considering the claims of a patent, we are constrained to look at the claims in the patent and not the claims of advertising material designed for the purpose of selling a product.

We therefore turn to claims 5, 7 and 9. Each reads identically with the exception of the final paragraph. The initial paragraphs read as follows:

"A device for transferring a part of the load of a trailing vehicle to a

---

suit was the accomplishment for the first time of:

(a) Increase of flexure of both spring bars as soon as any disalignment of the towing and trailing vehicles occurs.

(b) Resistance to endwise movement of spring bars of sharply progressively increasing character upon any disalignment of towing and trailing vehicles.

(c) Resistance to movement of spring bars past normal straight travel position following completion of a turn, and

(d) Transmission through the spring bars and the associated pivots and brackets to the towing vehicle of forces caused by the cooperating cams and cam followers which tend to tilt the towing vehicle inwardly while traversing a curve or making a turn."

tractive vehicle to which it is pivotally connected, comprising

a rigid unit adapted to be secured to the frame of a tractive vehicle and including a rigid bracket,

a pair of elongated spring bars pivoted at one end thereof about substantially vertical axes to said bracket in laterally spaced relation to the pivot connection of said vehicles,

means adapted to be carried by the frame of a trailing vehicle in laterally and rearwardly spaced relation to said bracket and supporting the free ends of said spring bars in upwardly flexed position, and

means for resisting endwise movement of said spring bars relative to said supporting means, * * * "

The respective final paragraphs read as follows:

"5. said last named means including cams spaced fore and aft of the normal position of supporting interengagement of each spring bar with its supporting means."

"7. one part of each interengaging pair of spring bars and supporting means carrying a pair of longitudinally spaced cams and the other part of said pair carrying a rotatable cam-engaging member normally positioned between said cams."

"9. one part of each interengaging pair of spring bars and support means having a substantially V-shaped recess confronting the other part and said other part of each pair having a part normally seating in said recess."

While Elkhart in its argument on this point quotes only the second paragraph of 35 U.S.C. § 112 which was in effect at the time of the issuance of the patent in question, for a proper determination of the issue before us it is necessary that we consider the entire section of the statute then reading as follows:

"The specifications shall contain a written description of the invention, and of the manner and process of making and using it, in such full, clear, concise, and exact terms as to enable any person skilled in the art to which it pertains, or with which it is most nearly connected, to make and use the same, and shall set forth the best mode contemplated by the inventor of carrying out his invention.

"The specification shall conclude with one or more claims particularly pointing out and distinctly claiming the subject matter which the applicant regards as his invention.[4]

"An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."

Turning to the patent itself, we note the clear and explicit illustration of the functioning component parts of the hitch and possible variations thereof.

Further, the patent after describing the operation of the hitch states the following:

"Thus it will be seen that both spring bars must flex to accommodate this action with the greater flexure occurring at the spring bar at the outside of the turn. This tends simultaneously to elevate the trailer tongue slightly and also to tilt the trailer tongue laterally in the direction of the turn. This action is compared to that experienced in the travel of a vehicle around a banked turn and greatly increases the stability of the tractor-trailer combination during the turn.

---

4. This paragraph of 35 U.S.C. § 112 was amended effective October 24, 1965. The effective date of the amendment of course was subsequent to the issuance of the patent in question and in any event the amendment would not be material here.

High speed turns are possible by reason of this relation of the parts.

"As soon as the turn is completed and the tractive vehicle has straightened in its direction of travel, the trailer tends to follow it in a straight path. This is facilitated by the cam surfaces between the seat portion 74 of the cam bracket 68 and both the front bracket part 76 and the rear bracket part 78. Under normal conditions the movement of the spring arms 30 relative to the knuckles 64 incident to making a turn will be comparatively limited so that the knuckle 64 will remain in contact with at least one of the cam surfaces while the turn is being made. Thus the engagement of this knuckle and cam surface, together with the increased flexure of the spring 30, tends to apply a force to restore the parts to their normal positions with the knuckles 64 fitting in the seat 74. By reason of this arrangement it has been found that, if a tractive vehicle traveling at substantial speed as it finishes a turn is freed of driver control upon the steering wheel, the tractor-trailer combination will act automatically to restore itself to straight line travel. This element is of considerable importance and serves as a stabilizing factor to prevent side sway of the character which normally leads to or causes jackknifing." [5]

We entertain no doubt that the elements in the claim for the combination are expressed in such full, clear, concise and exact terms as to enable any person skilled in the art to make and use the same.

■ If the defendant's contentions were correct that the claims were vague and indefinite, the resulting ambiguity would enable us to read and construe the claims in the light of the specifications, and to interpret liberally the claim as to uphold and not destroy the right of the inventor in the substance of his

invention. Westinghouse Electric & Mfg. Co. v. Quackenbush, 53 F.2d 632, 634 (6th Cir. 1932); cf. Linde Air Products Co. v. Graver Tank & Mfg. Co., 86 F.Supp. 191, 198 (N.D.Ind.1947), aff'd 336 U.S. 271, 69 S.Ct. 535, 93 L.Ed. 672 (1949) and 339 U.S. 605, 70 S.Ct. 854, 94 L.Ed. 1097 (1950).

We are of the opinion therefore that the district court was not clearly erroneous in finding that the claims properly claimed the combination and arrangement of parts required to achieve the features and results involved. In other words, it is evident that the claims in issue recite all elements essential to the operation of the Reese patented device to resist side-sway and no required element has been omitted from the claim. We do not find that bi-level cams are necessary to resist the sidesway, and the positive cam detent action for straight line position is inherent in the claimed means resisting endwise movement of the spring bar relative to the supporting means.

■ A statement of the scientific principles involved in a patented apparatus is not required in a patent which describes and teaches how to make and use the device.

"Indeed, it is not necessary that the patentee understands or is able to state the scientific principles underlying his invention. Diamond Rubber Company of N. Y. v. Consolidated Rubber Tire Company, 220 U.S. 428, 435, 436, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Elgen Manufacturing Corp. v. Grant Wilson, Inc., 285 F.2d 476, 479 (7 Cir., 1961)."

Canaan Products, Inc. v. Edward Don & Co., 388 F.2d 540, 545 (7th Cir. 1968).

Elkhart contends that the cam and cam follower are merely a substitute for the chains in earlier patents, including Reese Patent I, and that the same arcing function or process is involved in both. It thus contends that the substitution

5. The numbers in the quoted portion of the patent refer to numbers on the drawing of specific portions thereof.

should have been obvious. In our opinion, while there may be arguable surface similarity, this was refuted by evidence of the difference in the arc and its effect; and that the similarity begins with the location of the two elements, one being substituted for the other geographically in the hitch arrangement, but that the similarity ends there as the function of the resultant combination was adequately demonstrated to be different by the evidence.

■ The fact that Reese cannot explain exactly how it happens even after it has been done, as Judge Duffy of this court stated in Canaan Products, Inc. v. Edward Don & Co., *id.*, at 545, is strong proof of the unobviousness of such a combination.

Also, with regard to obviousness, it appears from the evidence that the Reese Patent I hitch would permit lateral as well as forward-backward swinging and that the resistance rather than being of a definite controlling nature would be comparable to that of a gradually subsiding children's swing. The greater the lack of control of the flexure, of course, the greater would be the likelihood of erratic hitch performance and unpredictable results.

Elkhart, in urging that the combination of parts of Reese's Patent II claim was obvious from the prior chain-suspension spring bar hitches, credits those skilled in the art with much greater perceptivity than the actual persons in the art, including the engineers and employees of Elkhart, actually exercised or displayed. There was no evidenced conception or production of the claimed hitch in suit until after Reese had placed its patented hitch on the market and had displayed it at the Elkhart Trailer Park. Hindsight is obviously more effective than foresight but we do not place significant weight upon arguments of obviousness based on hindsight.

Judge Kerner of this court has set forth a detailed analysis of the criteria applicable to the determination of the matter of obviousness in Deep Welding, Inc. v. Sciaky Bros., Inc., 417 F.2d 1227, 1232–1233 (7th Cir. 1969). *See also,* Graham v. John Deere Co. of Kansas City, 383 U.S. 1, 86 S.Ct. 684, 15 L.Ed.2d 545 (1966).

We do not find erroneous the district court's finding that the combination of functionally cooperating parts to which the claims in suit are directed would not have been obvious at the time the invention was made to a person having ordinary skill in the art.

The findings of fact listed each of the patents and prior art devices which Elkhart contended invalidated Reese Patent II. Without unduly lengthening this opinion, we merely express satisfaction with the differentiations set forth in the findings of fact to eliminate the anticipation invalidity.

■ Finally, in reaching the position we do, we note the presumption of validity which attends the grant of the patent which can be overcome only by clear and convincing evidence. Copease Mfg. Co. v. American Photocopy Equipment Co., 298 F.2d 772 (7th Cir. 1961); Helms Products v. Lake Shore Mfg. Co., 227 F.2d 677, 680 (7th Cir. 1955). The presumption of validity is entitled to greater weight when the principal art relied upon by the defendant, as here, has been considered and rejected by the patent office. Hunt v. Armour & Co., 185 F.2d 722, 726 (7th Cir. 1950); Lewyt Corp. v. Health-Mor, Inc., 181 F.2d 855, 857 (7th Cir. 1950), cert. denied 340 U.S. 823, 71 S.Ct. 57, 95 L.Ed. 605.

■ A patented combination which results in a more facile, economical or efficient unit, or which provides results unachieved by prior art structures, cannot be anticipated piecemeal by a showing that the various elements of the invention are individually old. Diamond Rubber Co. v. Consolidated Rubber Tire Co., 220 U.S. 428, 31 S.Ct. 444, 55 L.Ed. 527 (1911); Loom Co. v. Higgins, 105 U.S. 580, 591–592, 26 L.Ed. 1177 (1882); O'Brien v. O'Brien, 202 F.2d 254, 255

(7th Cir. 1953). Further, we note the fact contained in the finding that the Reese hitch under the patent in suit has been and is an outstanding commercial success.

For the reasons hereinbefore set out we find that the district court reached the correct result in regard to the validity of claims 5, 7 and 9 of the patent in suit.

We now turn to the other principal contention of Elkhart: that the accused Bock sway-control hitch, which was the subject of patent 3,206,224 granted September 14, 1965, does not infringe Reese Patent II.

■■■ Infringement exists if the accused device is the structural equivalent of the device described in a patent, and performs substantially the same function, in substantially the same way, to achieve the same results, even though it differs in form or shape. Union Paper Bag Mach. Co. v. Murphy, 97 U.S. 120, 125, 24 L.Ed. 935 (1878).

More important than a literal application of claim phraseology and similarity of results is the necessity of real identity of means, operation and result. Skirow v. Roberts Colonial House, Inc., 361 F.2d 388, 391 (7th Cir. 1966).

■■■■ At the outset, in determining whether there was infringement, we attach no significance to the fact that Elkhart was granted a patent since evidence is indicative of the fact that Elkhart had access to Reese's patented hitch at Bock Park, owned by Elkhart, on July 20, 1963, and at the trailer show in the city of Elkhart in August 1963. The application for the Bock [Elkhart] patent was filed October 28, 1963. It appears that the Elkhart patent application did not claim the same subject matter claimed in the application of the Reese Patent II, and the patent office did not declare an interference. The issue of infringement, however, is tested solely by consideration of the accused device and the invention claimed in the patent alleged to be infringed; and if a claim of such patent defines the accused device, it is infringed. Temco Electric Motor Co. v. Apco Mfg. Co., 275 U.S. 319, 328, 48 S.Ct. 170, 72 L.Ed. 298 (1928).

With regard to the accused Bock hitch, the evidence clearly and adequately supports the following. It utilizes a hitch mount secured to the frame of the towing vehicle and carrying, in addition to a hitch ball, a pair of pivot means laterally spaced at opposite sides of the hitch ball at each of which it pivoted the forward end of one of a pair of long spring bars. The spring bars extend rearwardly along opposite sides of the tongue of the trailer which is connected to the towing vehicle by a coupler engaging the hitch ball. The A-frame tongue of the trailer fixedly secures or mounts at each side thereof a frame bracket to which is secured in selected vertical adjustment a tracking bracket with its lowest part centered and with inclining upward surfaces on both sides thereof. This serves as a part of the support for the free end of the spring bars to which a roller is attached. One of the figures in the drawings with Reese Patent II showed a variation use with a roller. The inclined surfaces are traversed by the roller upon any disalignment of the towing and trailing vehicles, thereby entailing fore and aft endwise movement of the spring bars. The use of the fore and aft inclined surfaces provides for an increase of the flexure of both spring bars upon any disalignment of the towing and trailing vehicles and constitutes the means of preventing side-sway of the trailer. Reese contends, and correctly in our opinion, that functionally the means are identical for achieving the result by the same basic operation.

Elkhart contends there is a difference here in that its track is not a V-shaped cam as is the Reese hitch produced under its patent and Elkhart further contends that the roller moves freely from end to end on its curved track. However, it seems clear to us that the endwise movement of the rollers in the tracks is of necessity resistive because the movement is uphill and thereby flexes both springs.

Elkhart also argues that bi-level cams are essential in plaintiff's patent although they are not referred to in the claims in suit and the absence of the bi-level cams in the accused Elkhart device is therefore a material difference.

The words of the Supreme Court in Graver Tank & Mfg. Co. v. Linde Air Products Co., 339 U.S. 605, 607, 70 S.Ct. 854, 856, 94 L.Ed. 1097 (1950), are apposite here:

"But courts have also recognized that to permit imitation of a patented invention which does not copy every literal detail would be to convert the protection of the patent grant into a hollow and useless thing. Such a limitation would leave room for—indeed encourage—the unscrupulous copyist to make unimportant and insubstantial changes and substitutions in the patent which, though adding nothing, would be enough to take the copied matter outside the claim, and hence outside the reach of the law. One who seeks to pirate an invention, like one who seeks to pirate a copyrighted book or play, may be expected to introduce minor variations to conceal and shelter the piracy. Outright and forthright duplication is a dull and very rare type of infringement. To prohibit no other would place the inventor at the mercy of verbalism and would be subordinating substance to form. It would deprive him of the benefit of his invention and would foster concealment rather than disclosure of inventions, which is one of the primary purposes of the patent system."

The result correctly reached by the district court was that the accused device had substantially the same structure, did substantially the same work in substantially the same way and accomplished the same result as the device of the patent. Continental Paper Bag Co. v. Eastern Paper Bag Co., 210 U.S. 405, 418–419, 28 S.Ct. 748, 52 L.Ed. 1122 (1908); Binks Mfg. Co. v. Ransburg Electro-Coating Corp., 281 F.2d 252, 258 (7th Cir. 1960), cert. denied 366

U.S. 211, 81 S.Ct. 1091, 6 L.Ed.2d 239 (1961); and Ingersoll Milling Machine Co. v. General Motors Corp., 207 F.2d 42, 46 (7th Cir. 1953).

Elkhart contends that even if there were direct infringement, the district court's finding of contributory infringement was wholly unwarranted in that it was not an issue, not being pleaded, and was unsupported by the evidence.

The complaint, however, does charge infringement and was not challenged as to specificity.

The definition of infringement of a patent is contained in 35 U.S.C. § 271, which reads in part as follows:

"(a) Except as otherwise provided in this title, whoever without authority makes, uses or sells any patented invention, within the United States during the term of the patent therefor, infringes the patent.

"(b) Whoever actively induces infringement of a patent shall be liable as an infringer.

"(c) Whoever sells a component of a patented machine, manufacture, combination or composition, or a material or apparatus for use in practicing a patented process, constituting a material part of the invention, knowing the same to be especially made or especially adapted for use in an infringement of such patent, and not a staple article or commodity of commerce suitable for substantial non-infringing use, shall be liable as a contributory infringer."

There was, however, evidence in this cause with regard to Elkhart's sway-control conversion kit being usable on most frame hitches and advertised as having all of the advantages of the Bock sway-control "readily added to your present hitch." The evidence showed installation instructions, including directions to burn off the existing chain and to weld the roller assembly on the end of spring bars as shown.

The matter being in evidence we can and do deem the pleadings to be amended to conform therewith. Fifth Avenue

Bank of New York v. Hammond Realty Co., 130 F.2d 993, 995 (7th Cir. 1942); McAllister v. Sloan, 81 F.2d 707, 709 (8th Cir. 1936).

We cannot assume that Elkhart was manufacturing and advertising the conversion kit for the purpose of acquiring manufacturing experience or testing the market. The finding of contributory infringement was not clearly erroneous.

During the oral argument on this appeal the issue was raised for the first time by Elkhart that there was no proof of infringement during the period following issue of the patent in suit and preceding the filing of the action. While we might, because of the belated nature of this assertion, just disregard it completely, we note that the evidence, while meager, contains a letter from Elkhart in the pertinent period asserting that there was no reason that Elkhart should withdraw its present sway-control hitch from the market or change its structure in any way. Further, the record established that Elkhart made only one model of sway-control hitch and its vice president testified that the parts were substantially as they had produced them since the start of production of the sway-control hitch. Basically, it appears that this is one of those matters which everyone assumed which, of course, does not excuse the necessity of some proof of a necessary element. Here, however, under the circumstances recited we do not find the matter cause for reversal.

Other points raised by Elkhart concern (a) claimed discrepancies between the findings of fact and the evidence which we find either non-existent or non-significant and (b) claimed inadequacy in certain items of evidence. Elkhart in effect belittles the probative value of certain of Reese's exhibits; but this argument in reality goes to the weight to be accorded these exhibits which should basically have been a matter of argument to the trial court and not here where the scope of our inquiry is whether the decision below is clearly erroneous. As a matter of fact, much of Elkhart's brief has taken the form of factual argument which would be more appropriate if we were trying the present matter de novo.

We find other contentions of Elkhart to be nonpersuasive and not requiring express disposition herein.

Accordingly, the judgment of the district court is affirmed.

Affirmed.